# REPORTS

OF

## CASES ARGUED AND DETERMINED

AT

## JANUARY TERM, 1839.

---

ROCHELLE *vs.* HARRISON.

1. A husband can only be charged by the contract or admission of his wife, in consequence of some authority actually given, or necessarily implied, from the circumstances under which she acts.

2. But the circumstances under which plaintiff's property went into possession of the intestate of a defendant administratrix, may be shewn, in detinue, by proving a request from defendant to plaintiff to that effect, in the life time of her husband.

3. A contract for the sale of negroes, which is *executory*, and which is intended to defraud creditors, does not pass the title : and an action brought on the contract, by the vendee against the vendor, for the slaves, cannot be maintained.

4. The act to prevent frauds and perjuries, (Aik. Dig. 207,) avoids all gifts or conveyances in fraud of the rights of creditors— only, however, in favor of creditors and purchasers.

5. A deed is not necessary in a conveyance of personal estate ; a delivery passes title, as effectually as the most solemn instrument.

6. And such a delivery of a personal chattel, in derogation of the rights of creditors, is within the inhibition of the statute.

Rochelle *vs*. Harrison.

7. What the law will not accord by suit, cannot be attained by fraud or force:

8. Therefore, whenever the title to property has once passed by , an executed contract, it cannot be re-vested by re-caption, or any other mode of acquiring possession.

9. (In Massachusetts, a distinction is made between actual conveyances, and contracts sought to be enforced: the latter may be avoided—the former are binding.)

10. (But in New York and Ohio, conveyances void by statute, as against creditors and purchasers, are binding between the parties.)

Error to Lowndes Circuit court.

Detinue for slaves, tried by *Pickens*, J.

An action of detinue, was instituted by Harrison, against Elizabeth B. and James Rochelle, for the recovery of two negro slaves. The defendants pleaded the general issue; and at the trial, a verdict was returned in favor of the plaintiff, against Elizabeth B., and in favor of the other defendant; on which judgment was rendered.

The plaintiff claimed title to the slaves, by shewing a written agreement between himself and one George Rochelle, the husband of the defendant, Elizabeth, executed in April, eighteen hundred and thirty-two, by which Rochelle admitted that Harrison was seized and possessed of the slaves sued for, with others, and hired the same of him until the first day of January, eighteen hundred and thirty-three. By another writing, dated in December, eighteen hundred and thirty-three, signed by the said Rochelle, it appeared that he then again hired the same slaves; but no time of hiring was therein specified.

Rochelle *vs.* Harrison.

The plaintiff proved by one Neal, that he was employed as his overseer, and put on the plantation where Rochelle lived, in January, eighteen hundred and thirty-five; and that all the slaves on the plantation were put under his charge. That the slaves sued for, were too small to work in the field, and they remained in the house, waiting on Rochelle's family. In January, eighteen hundred and thirty-six, Rochelle removed to Lowndesborough, where he died in that year. Previous to the removal of the family of Rochelle, the defendant, Elizabeth, requested the witness to speak to Harrison, and request him to allow her to take the slaves sued for, with them, to wait on the family; and Harrison said to witness that she might do so, as they were too small to work in the field.

The defendants objected to the admission of the declarations, either of Mrs. Rochelle or of Harrison, as forming no part of the *res gestæ*—but the court admitted the evidence.

After proof of the value of the slaves, and a demand of them, and refusal to deliver, the plaintiff closed his evidence.

The defendants then gave in evidence, that all the slaves mentioned in the agreement for the hiring, had once belonged to George Rochelle; and offered evidence conducing to show, that if any sale was ever made by him to Harrison of the slaves in question, it was with an intent to defraud creditors of said Rochelle; and moved the court to instruct the jury, that if the sale was made with such intent, Harrison, not having possession of the slaves, could not recover under such fraudulent sale

8 P. 45

and purchase.   This charge was refused, and the jury were instructed, that even if such sale was fraudulent as to creditors, yet the plaintiff could recover against the defendant; she being the administratrix of said Rochelle, but being neither creditor nor purchaser.

The admission of the evidence, the refusal to charge as requested, and the charge as given, were excepted to, and a bill of exceptions signed.   A writ of error was sued out, and the judgment sought to be reversed, on the supposed errors stated in the exceptions.

*Williams,* for plaintiff in error.

*Williams,* for plaintiff in error, to show that the admissions of defendant ought not to have been received, cited 2 Nott & McCord, 374; 7 Term Rep. 112; 3 Munford's R. 29; Wharton's Dig. 249; 5 Conn. Rep. 93; 2 Starkie on Ev. 400, top and bottom; 6 East. R. 192; 1 Term R. 69; 1 Burr. 635; 2 Ch. Cases, 69; Bull. N. P. 286.

To support the other points—12 Wheat. 567; 8 Cranch. 72; 11 Wheat. 209.

To shew that the plaintiff was not entitled to recover on the ground of the fraudulent intention towards creditors, he cited—4 Peters' R. 184; Case from Hill's So. Ca. Rep. Gaston, adm'r vs. Ballard; 3 Cranch, 307, 242; 5 Cranch, 363; Aik. Dig. 207.

GOLDTHWAITE, J.—It is insisted, that the evidence admitted by the Circuit court, of the request made of Harrison by Mrs. Rochelle, and his answer ought to have

Rochelle *vs.* Harrison.

been excluded, as the admission of a *feme covert* is not evidence to charge the husband or his estate, unless made at a time when acting under his authority as an agent. The rule is unquestionable, that the husband can only be charged by the wife, in consequence of some authority actually given, or necessarily implied, from the circumstances under which she acts—(Hawkins vs. Hatten, 2 Nott & McCord, 374; Denn vs. White et ux. 7 Term. R. 112; Sheppard vs. Starke and wife, 3 Munf. 29; Aveson vs. Ld. Kinnaird, 6 East, 192.)

But the application of this rule to the present case is not perceived. The attempt is not made by this action, to charge the husband or his estate, in consequence of any admission by the wife. The question at issue was one relating to the title to the slaves. No title whatever in the husband had been disclosed when this evidence was offered and excepted to; but, on the contrary, a written contract made with the husband for the hire of the slaves in eighteen hundred and thirty-two and eighteen hundred and thirty-three, was in evidence. The plaintiff might have deemed it important, as it was certainly competent for him, to shew, in what manner the slaves were permitted to depart from the plantation occupied by his overseer in eighteen hundred and thirty-five; and for this purpose it was proper for him to shew a request made of him by Mrs. Rochelle, which he complied with. If the action had been instituted against Rochelle in his life-time, such evidence would have been admissible, not as evidence of title, but as shewing the *quo animo* under which he parted with the possession, or as a reason why possession was not then taken. It was, in fact, nothing

more than an explanation of the circumstances connected with the removal of the slaves.

The question arising out of the exception to the instructions given to the jury, is one of more importance, if not of more intrinsic difficulty. The evidence subsequently introduced, was probably of a character calculated to shew that Rochelle, in his life-time, had sold the slaves to Harrison, under circumstances calculated and intended to defraud the creditors of Rochelle. It was evidently an *executed contract*, if we are to judge from the evidence stated in the bill of exceptions, and was not executory, or dependent on some act to be subsequently performed by either party. Possession was actually delivered; or, if not, Rochelle was estopped from denying that fact, as he acknowledges a hiring from Harrison, in eighteen hundred and thirty-two, under his hand and seal. If the contract between Harrison and Rochelle was merely executory, and not executed, no title to the slaves would have passed by it, and the action could not have been maintained. It is possible that a mere executory contract, tainted with fraud, would not be enforced by a court of justice; but it is unnecessary now to decide this question, it not being presented in this cause. Considering the sale as an executed contract, it is directly within the terms of the second section of the act to prevent frauds and perjuries—which avoids every gift, grant, or conveyance of lands, tenements and hereditaments, goods or chattels, made to delay, hinder or defraud creditors or purchasers; but avoids it only in favor of creditors and purchasers—(Aik. Dig. 207.) It is not necessary to a conveyance of the title of personal estate, that it

Rochelle *vs.* Harrison.

should be by deed ; a mere delivery is as effectual for the purpose of passing the title, as if the property was conveyed with all the formalities usually attending the transefer of the title to real estate; and is equally within the intention and meaning of the statute.

The argument of the plaintiff in error, assumes, that when the fraudulent seller or donor, by any means recovers the possession of the property fraudulently conveyed, and his purchaser or donee is compelled to resort to an action to re-gain the property, he ought not to be aided; because he is then seeking to enforce a contract void in law, or as against public policy. Let this position be examined, and see the consequences to which it must lead. By the covinous arrangement, the creditor or purchaser is first defeated in his rights—then the seller or donor, by fraud or force, obtains possession of the property, which it is admitted he cannot re-gain by suit. If the fraudulent purchaser or donee is without redress—if his possession is violated by the seller or donor,—there is a direct temptation held out to obtain the possession, by the most violent and iniquitous means. If no suit could be maintained according to the title, as settled by the parties themselves, it would indeed resolve the rights of parties into mere questions of fraud or force; and anarchy and bloodshed must be the inevitable consequences of establishing such rules. It may be asserted, as a principle which scarce admits of exception, that what the law will not accord by suit, cannot be attained by fraud or force. Whenever the title to property has once passed by an executed contract, it can not be re-vested by recaption, or by any other mode of acquiring the possession.

It has been supposed that the case of the Executors of Gaston vs. Ballard (1 Hill, 406,) sustains the position assumed for the plaintiff in error. The facts of that case were as follow: Ballard was liable as security for a large amount, and in order to prevent certain slaves from being seized and sold to pay the debt for which he was liable, placed them in the hands of Gaston to keep for him. Gaston was to pay some of Ballard's debts, as a hire for the slaves, which were delivered to Gaston in eighteen hundred and twenty-one, and remained in his possession until eighteen hundred and thirty; when some of them run away, and came to the possession of Ballard, who immediately sold them to his son for a fair and valuable consideration. Gaston's executors sued Ballard, junior, and the court held that they were not entitled to recover.

It will be perceived, that in this case, there was no sale or gift of the slaves to Gaston;—the title was never in any manner conveyed to him, and remained in Ballard during the whole time, and he could have sued for and recovered the slaves, if the facts of the case are truly stated.

In the case of Phelps vs. Decker, (10 Mass. R. 274) it was held as the doctrine of the common law, that deeds of conveyance, or other deeds, made contrary to the provisions of a general statute, or for an unlawful consideration, or to carry into effect a contract unlawful in itself, or in consequence of any prohibitory statute,—are void *ab initio*, and may be avoided by plea; or on the general issue, *non est factum*, the illegality may be given in evidence. But in a later case, the doctrine was qualified,

Rochelle *vs*. Harrison.

and the court took the distinction between bonds and contracts sought to be enforced, and actual conveyances of lands or other property. The former might be avoided: the latter were treated as actual transfers, and governed by the same rule as the payment of money, or the delivery of a personal chattel—(Inhabitants of Worcester vs. Eaton, 11 Mass. R. 375.)

In New York and Ohio, it has been held that conveyances, void by the statute, as against creditors and purchasers, were binding between the parties, and could not be avoided—(Anderson vs. Roberts, 18 Johns. R. 515; Burgett vs. Burgett, 1 Ohio R. 219.)

Our opinion is in accordance with these cases, and the judgment of the Circuit court is affirmed.