ROBINSON v. G. MARTEL, ADM'R OF F. MARTEL.

Causing a subpœna for a witness to be placed in the hands of the Sheriff, is not due diligence, although the witness reside in the County.

An affidavit for a continuance may be made by the attorney; but it must exclude the conclusion that it was so made because the party himself could not conscientiously make it.

Section 90 of the Act of 1846, to regulate proceedings in the District Courts, (Hart. Dig. Art. 745) does not apply where the original document is introduced and proved as at Common Law; that is, it is not necessary, in such a case, that the document be previously filed, &c.

The deed of an administrator *pro tem*, executed without authority, is not admissible for any purpose, in a suit afterwards instituted by the same person as administrator, to recover the property mentioned in the deed.

Where the allegation in the answer of a subsequent purchaser was, that the former bill of sale was given for no consideration, and was therefore wholly null and void, and was so considered by the parties; and the offer to introduce evidence was, to prove that the bill of sale was without any consideration, and fraudulent and collusive between the parties, the Court said, that the offer must be treated as a single proposition, and, as there was no allegation of fraud in the answer, it was properly rejected.

A conveyance, made to hinder and delay creditors or to defraud subsequent purchasers, cannot be impeached on account of the fraud, by a subsequent purchaser who has actual notice of such conveyance, at the time of his purchase, although he pay the full value of the property.*

Newly discovered testimony to sustain a defence which is inherently bad, constitutes no ground for a new trial.

A voluntary conveyance, that is a conveyance upon consideration not deemed valuable in law, if duly recorded, cannot be impeached by a subsequent purchaser, for the want of consideration merely.

Appeal from Fayette. Suit by appellee against apppellant, to recover a slave (Ned) or his value, and the value of his services. Both parties claimed by purchase from Henry Martel. The bill of sale to the plaintiff's intestate was dated July 24th, 1847; was filed for record on the 31st of May, 1850; and purported (including another slave) to be made in consideration of $1,055. The bill of sale to the defendant was

---

*It is the Reporter's opinion that the evidence shows actual notice; and so the Court seems to have regarded it.

dated July 9th, 1851, and purported to be made in consideration of $900. It was witnessed by Gustavus Martel, the present administrator of Fred Martel; and it appeared on the trial, by an order of the County Court, that Gustavus, on the 2nd of July, 1851, seven days before he witnessed the deed from Henry to the defendant, had been appointed administrator *pro tem* of Fred, with power to collect and preserve the property of the estate; but it did not appear that he had taken the oath or given bond. On the 14th of July, 1851, James T. Patton was appointed the administrator *pro tem* of Fred Martel's estate, with power to sue, &c. On the 25th of July, 1851, while Patton was in possession of the slave, the defendant took him forcibly out of his possession. Patton immediately brought this suit. Afterwards, Gustavus Martel claimed the administration as next of kin, and was appointed, qualified, and made a party to this suit. The defendant pleaded in his answer, that the bill of sale from Henry to Fred, was given for no consideration, and was therefore wholly null and void, and was so regarded by them in the lifetime of the latter; and that the slave remained in Henry's possession, and was by him delivered to the defendant.

The defendant made a motion for a continuance, supported by the affidavit of his attorney, on the ground of the absence of a material witness. The affidavit stated that a subpœna had been issued, for the witness, and placed in the hands of the Sheriff—and in other respects was in the usual form. The motion was overruled.

The defendant offered to read a bill of sale to himself, of the same slave, by Gustavus Martel, as administrator *pro tem* of Fred Martel. It was rejected and the defendant excepted.

The defendant proved by Glant, that he knew Henry and Frederick Martel, before the latter went to California in 1849; that they lived together; that Henry exercised ownership of all the property, and Fred seemed to be a hired hand in the field; that while Fred was in California, Henry retained possession; that after Fred returned, both Henry and Fred exer-

cised ownership over the negro, and he did not know who sold the crop. Grassmeyer testified for the defendant, that he was at the residence of "*the Martels*" once or twice between the years 1847 and 1851; and that the negro seemed to be under the control of Henry; that he never heard Fred claim but one negro, not the one in controversy. Isaac Kellough, witness for defence, testified that Henry claimed the boy Ned prior to the execution of the bill of sale in 1847; that after the bill of sale was executed, witness went with Assessor and Collector to the residence of the Martels to assess taxes; that Henry and Fred were both there; Henry stood back and Fred claimed the property and gave it in for taxes; and Henry knew the business of the Collector; Henry claimed the boy while Fred was in California, but gave in the property as agent of Fred; that Fred was regarded as a poor man, and had no visible means.

The defendant offered to introduce evidence to prove that the bill of sale from Henry to Fred "was without any consideration and fraudulent and collusive between the parties." The evidence was excluded, and the defendant excepted.

The plaintiff offered to prove and read as rebutting testimony a power of attorney from Fred to Henry, dated April 19th, 1849, giving him charge of his property while absent in California. This power of attorney was recorded on the 1st day of March, 1851. The defendant objected; but the Court admitted it; and the defendant excepted.

By John Paine the plaintiff proved that he was a near neighbor and was frequently at the place, from 1847 to the death of Fred Martel; that he was at Fred's before he went to California, and in Henry's presence asked him what he would do with his property, and he said he would leave Henry his agent whilst he (Fred) was in California. Witness was often at Martel's, and Henry was often at the house of witness; and the boy Ned was on the place. Henry told witness that he was the agent of Fred; that he (witness) had hired the boy of Fred, both before and after he went to California, and paid

Fred, and Henry knew it, and made no objection. Witness was at Martel's on one occasion drinking grog; some of the party became noisy; Henry reproved them; Fred ordered him to his rooms; that he understood from Fred, in Henry's presence, that he paid $1,500 for the farm; that he paid it to Henry, and $1,500 for the negroes, of which Ned was one. Fred was a cash man,—always had money—could borrow it, when Henry could not; that after the death of Fred, Robinson told him that he had bought the farm and negro Ned, and would put Henry in possession of the farm, in a week; that he told Robinson he would better not pay for the negro, for he belonged to Fred's estate; that Fred told him in Henry's presence, that he had paid Henry a horse and saddle, and furnished him two rooms, and agreed to board him in part consideration for the negro.

Murphy, also for the plaintiff, said he had seen the negro in Fred Martel's possession, and that Henry and Fred Martel, both told him said boy belonged to Fred; that Fred exercised ownership over him; that witness was at Martel's frequently, for several months previous and down to his death, and said negro was, at all times controlled by Fred, and he never knew Henry to set up ownership to him.

There was a verdict for the plaintiff. The defendant filed a motion for a new trial, on the grounds that the verdict was contrary to law and the evidence; that the defendant had been unable to attend the trial, whereby justice had not been done him; and newly discovered testimony. In support of this motion, the defendant filed his affidavit, that at the time of the trial he was laboring under severe bodily affliction, and could not be in attendance on the Court, nor confer with his attorney; and that he would be able to prove by the witness Perry, who had been subpœnæd and promised to attend but failed to attend, because of unexpected, urgent business, and by a newly discovered witness, Flack, that he had been misled by the acts and words of Fred Martel, and induced thereby to purchase the slave. Motion overruled. Judgment on the verdict.

Robinson v. Martel.

*B. Shropshire* and *J. R. Burns*, for appellant.

*Webb & Harcourt*, for appellee.

LIPSCOMB, J. The first error is, to the overruling the motion for continuance, made by the appellant, in the Court below. The affidavit on which the motion was supported, was made by the attorney of the party ; and he does not show any reason why it was not made by the defendant himself. Where a party is absent from the country, and his attorney takes it upon himself, to have witnesses subpœnaed, and is advised of the materiality of their evidence, there could be no objection to an affidavit for a continuance being made by the attorney, or any other person acting for the party. The attorney may know the importance of the evidence of an absent witness ; but unless the party himself is absent from the country, he could not know but the witness may have been absent by the consent or procurement of the party. He swears that a subpœna was placed in the hands of the Sheriff; but shows no further diligence. This showing would not have authorized a continuance, if it had been made by the party himself; and if made by an attorney or agent, it should be more specific, so as to remove all presumption that the party himself was not in a condition to have caused the absence of the witness. If such an affidavit could be considered as sufficient, a party could at all times obtain such continuance, by giving the witness leave to be absent, and leaving it to the attorney to swear for the continuance, who would know nothing of such manœuvring on the part of the client. We believe the showing for a continuance was insufficient, and that the Court did not err in overruling it.

The next error assigned, is the admission of a power of attorney, from Fred Martel to Henry Martel to act as his attorney in fact during the absence of Fred Martel in California. It is not perceived upon what grounds this objection was made. The record shows no evidence that the power of

19

attorney had been filed and notice given to the opposite party of an intention to use it as evidence; nor is it believed to have been necessary, where the original was introduced and proven, and not a certified copy from the office of the County Court Clerk. (Art. 745, Hart. Dig.)

The appellant assigns for error, the refusal of the Court below, to permit him to read in evidence a bill of sale from Gustavus Martel, administrator *pro tem*, to him, the appellant, for the negro slave sued for.

The Court did not err in rejecting this evidence. It was trifling with the Court, to offer it. An administrator *pro tem* had no right to sell, and could give no title, unless the sale was made under an order of the Probate Court.

All the other assignments can be considered together. The defendant in the Court below, wished to introduce proof that the bill of sale from Henry Martel to Fred Martel was without any consideration, and fraudulent, and collusive, between the parties. In considering the correctness of the decision of the Court below, refusing to receive the evidence offered to be introduced by the appellant, it is necessary to refer to the answer of the defendant, or as much of it as is material to this inquiry. It is as follows, i. e.: "He further alleges that the bill of sale, "by virtue of which plaintiff claims the said negro, was given "for no consideration, and therefore wholly null and void, "and was so considered by Henry and Fred Martel; that the "negro remained in possession of the said Henry Martel, "until sold and delivered to defendant." There seems to be two objections to the reception of the evidence offered. In the first place, there is no allegation in the answer, that there was any fraud or collusion between the parties to the bill of sale; and the evidence, offered, might well have been excluded on that ground, alone. But it seems that there is another more substantial objection to the evidence. We must take it as a naked proposition, for so it is presented in the bill of exceptions—an offer to introduce evidence to show that the bill of sale from "Henry Martel, to Fred Martel, was without con-

sideration, fraudulent and collusive between the parties." How the consideration, or the intention of the parties as between themselves, as an abstract proposition, showing no injury to the party now urging it, could be received as at all material, is difficult to conceive; and it may have been rejected upon this ground. And that it was, is probable, from the fact that considerable latitude was allowed in the introduction of evidence to show how far an innocent purchaser was deceived by the conduct of the plaintiff's intestate, Fred Martel, and showing who had the possession of the property sold.

But, admitting the sale to have been without consideration and fraudulent and collusive between the parties themselves, after it has been executed, it is not every one that can set up its nullity, for these vices. The law, for reasons of sound policy, has well defined what persons can set up and show the fraud of a transaction, that, if not impeached for such vices, might interfere with and defeat legal rights. A previous creditor has a right to impeach the consideration; so has a subsequent creditor or purchaser without notice. If one, without notice of the previous sale, purchases from the vendor, for a valuable consideration, he can set up the vices of the former sale; and one who being deceived by the appearance of ownership still remaining in the vendor, after the first sale, such as possession or acts of ownership, credits the original vendor, may impeach the first sale. But the vendor cannot; nor can any person claiming through him, affected with notice, even if he is a purchaser for a valuable consideration. The rule that a fraudulent vendor shall not be permitted to claim any advantage from, or to set up his own fraud to avoid his own acts however fraudulent, is founded in the soundest wisdom. (See Danzey v. Smith, 4 Tex. R. 411.)

The appellant moved, in the Court below, for a new trial, on various grounds; the most material are, forced into trial in the absence of the appellant, himself; in the absence of material witnesses; the discovery of other witnesses. There is nothing from which it is a reasonable inference, that the ver-

dict would have been different, had the absent witnesses and the newly discovered testimony all been before the jury ; because, as appears from the showing for a new trial, the evidence all would have gone to the same point, that the bill of sale from Henry Martel to Fred Martel, the intestate, was without any consideration ; which could not have changed the result. The statement of facts most fully sustains the verdict of the jury. It is shown that the bill of sale, made and executed to Fred Martel, the deceased, for the negro boy sued for, was duly recorded in the proper office, more than twelve months before the purchase and bill of sale relied upon by the appellant. It is fully shown, and by one of the defendant's own witnesses, that, after the sale made by Henry Martel to Fred Martel, the former never did claim the negro as his own. It is in proof, that the only time when the negro in question was under the control of Henry Martel, after the date of the sale to the intestate, Fred, was while the latter was gone to California, and the former was acting as his attorney in fact, under power duly recorded. It was proved that appellant forcibly took the slave from the possession of the administrator of Fred Martel.

The value of the slave, and of his services, all these facts so fully sustain the verdict of the jury, that the Court below would not have been authorized to set aside their verdict. On the whole case, we can perceive no ground for reversing the judgment, and it is affirmed.

Judgment affirmed.