## NATHANIEL HOESER v. FRITZ KRAEKA ET UX.

The 1st clause of the 2d section of our statute in relation to frauds and fraudulent conveyances reads as follows: "Every gift, grant, or conveyance of lands, *slaves*, tenements, hereditaments, goods or chattels, or of any rent, common, or profit out of the same, by writing or otherwise, and every bond, suit, judgment, or execution had, or made, and contrived of malice, fraud, covin, collusion, or guile, to the intent or purpose to delay, hinder, or defraud creditors of their just and lawful actions, suits, debts, accounts, damages, penalties, or forfeitures." But it is to be taken "only as against the person or persons, his or her heirs," &c. And the 3d and 4th clauses declare, that such gifts are to be taken as void, "unless proved by two or more witnesses, and recorded," &c., "or unless possession shall really and *bona fide* remain with the donee." (Paschal's Dig., Art. 3876, Notes 906, 907.)

It has frequently been *held*, that, as against the grantee and those claiming under him, with notice of the fraud, such conveyances are valid and binding. (Paschal's Dig., Note 907.)

The grantor cannot prove, against the recitations of his deed, that no consideration has been paid, and no delivery of the property made.

If A grant his goods to B in fraud of creditors, B can recover the goods from A's administrator on the ground, among others, that the deed was void only as against creditors; but that it remained good as against the party himself, and his executors and administrators.

Where H, to avoid his creditors, made a bill of sale to his daughter of his personal chattels, reciting the payment of a valuable consideration, and there was no delivery of the property or change of possession, but the grantor continued to use it, to sell it, and to give it away, he was yet liable to his daughter for the same, notwithstanding the maxim, *in pari delicto potior est conditio defendentis.*

Where the suit was in trover for the property, and the verdict of the jury for the value of the whole, without finding the separate value of each chattel, it was wrong, and on that ground the judgment was reversed.

A charge of the court, that the jury may find more than the value of the property in order to insure its return, is erroneous.

ERROR from Washington. The case was tried before Hon. ROBERT E. B. BAYLOR, one of the district judges.

On the 3d day of January, 1856, Nathaniel Hoeser executed his bill of sale to Augustus Kraeka to a wagon, oxen, horses, cattle, and other chattels, of the alleged value of $2,500. The defendant said that this bill of sale was without consideration, and was made to protect the property against a certain indebtedness, so as to save it to the family of the donor; that the property was never delivered, &c. However, the deed was proved by one witness, who swore that it was "a sham," and it was duly recorded; and Augusta and her husband sued Nathaniel for the recovery of the property so conveyed, and they proved the value of the property and the increase thereof. The grantee was the daughter of the grantor, and the proof was overwhelming that the sale was "a sham" to guard against an indictment, and that the plaintiffs asserted no claim under it until they sued. In fact, the defendant had disposed of nearly all the property before the suit was brought. There was no change of possession with the deed. There were various instructions asked and given. The jury returned a verdict for $500, the value of the property, and $50 for the use. Hoeser prosecuted error. The very question presented was, could the daughter and son-in-law take advantage of the bill of sale made when he was "scared," and for such a purpose? That is a deed made to avoid a probable judgment.

*J. D. & D. C. Giddings,* for plaintiff in error, summed up the facts. The rule of law applicable to cases of this kind is, that courts will not aid either party, either to enforce or restore property obtained under it. (Story on Cont., § 489.)

The evidence in this case clearly shows that the contract sued on is fraudulent and without consideration, made for the purpose of defrauding creditors; that none of the property had ever been delivered and had never been claimed by the plaintiffs till the institution of this suit. All parties

to this contract stand in the same position, and courts will give no aid or relief to either, but will put its seal of condemnation upon it whenever any of the parties come before them, and ask either the enforcement of the contract or relief from its effects. (Story on Cont., § 489.)

*Sayles & Bassetts*, for defendants in error.—The defendants in error brought suit to recover certain property, or its value, conveyed by plaintiff in error to the wife of defendant in error, Fritz Kraeka, by an instrument in writing, which, the proof shows, was recorded in Washington county.

The plaintiff in error plead that the conveyance was made without consideration, and to defraud creditors. The questions in this case have been settled by this court in the case of Lewis v. Castleman, Galveston Opinion Book, p. 320, [27 Tex., 415,] where it is said that the record of an instrument is tantamount to the retention of possession, and that a fraudulent vendor will not be permitted to avoid his deed by proof of the fraudulent intent.

WILLIE, J.—It appears very clearly from the evidence in this case that the conveyance from plaintiff in error to Mrs. Kraeka, was made in fraud of creditors; it was, therefore, void as to them. The only question for our consideration is, can it be enforced by the grantee against the fraudulent grantor?

Our statute of frauds declares such instruments void only as to the parties whose rights may be prejudiced thereby; and it has frequently been held under this statute, that against the grantor, and those claiming under him with notice of the fraud, such conveyances are valid and binding. (Danzy v. Smith, 4 Tex., 411; McLenny v. Floyd, 10 Tex., 166; Robinson v. Martel, 11 Tex., 155; Epperson v. Young, 8 Tex., 135.) And such has been the ruling of other courts upon statutes similar to our own. (7 Johns., 163; 4 Bibb, 65; 8 Porter, 351.)

But it is said, that whilst the law will respect such contracts, where they have been executed by a delivery of the property conveyed, yet it will not lend its assistance to compel a specific performance of such as are merely executory, it being a maxim of the law that *in pari delicto potior est conditio defendentis.* That in this case no actual delivery of the property conveyed ever took place; that possession remained with the grantor after the conveyance was made, and that the process of the law cannot now be invoked to compel him to deliver it up.

There can be no doubt but that the payment of the purchase-money, the delivery of the property, the making and delivery of the deed, and the registration of it as required by law, would have rendered this conveyance an executed contract. That the purchase-money was paid, and the possession of the articles conveyed given to the grantee, is stated in the deed and acknowledged therein by the grantor himself; and it is also manifest, that the deed was executed, delivered, and recorded according to the forms of the law. It cannot be urged by the grantor, under such circumstances, that no consideration was paid, and no actual transfer of possession made, for the purpose of impeaching the validity of the instrument. The enforcement of such conveyances at the suit of the grantee was doubtless intended as a punishment to the fraudulent grantor for his iniquitous attempt to avoid the payment of his just debts. To allow him to set up the two principal badges of fraud above mentioned, in avoidance of his conveyance, would be to permit him to escape this penalty in almost every instance. He cannot say to the creditor that the property belongs to the grantee, having been purchased by him for a valuable consideration, and that the purchaser holds a regular deed of conveyance therefor, executed, delivered, and recorded, and at the same time say to the grantee, that the deed was fraudulent, that no consideration actually passed, no delivery really took place, and

that these facts were merely acknowledged for the purpose of putting the property beyond the reach of creditors.

The question as to how far the courts will go in enforcing a fraudulent conveyance between the parties thereto, and those claiming under them, has frequently undergone judicial decision in England and America; and it has universally been held, that wherever the conveyance was completed, either by the actual or constructive delivery of the property, the grantee was entitled to recover, though the grantor was in possession of the property at the commencement of the suit, and had been continuously so from the date of the conveyance. And it has been further held, that if the transfer was by deed it would be binding, though no consideration was paid and no possession given. (Chitty on Cont., 362.) As far back as Yelverton's Reports it was held to be law, that if A grant his goods to B in fraud of creditors, and afterwards die, B could recover the goods from A's administrator, on the ground, among others, that the deed was void only as against creditors, but that it remained good as against the party himself and his executors and administrators. (Harvey v. Leader, Yelv., 196.)

The right of the grantee to recover rests upon stronger grounds, if possible, where, in addition to an execution and delivery of the deed, a registration of it has taken place; for at least, so far as conveyances purporting to be voluntary are concerned, the statute has made registration tantamount to a delivery of the property. (Lewis v. Castleman, Galveston T., 1864,) [27 Tex., 415.]

In accordance with the doctrine announced in the present opinion are the cases of Danzey v. Smith's Adm'r., 4 Tex., 411, and Epperson v. Young, 8 Tex., 135. In neither of these cases was there any consideration paid or any actual delivery of the property conveyed, and in the latter the suit was brought by the fraudulent grantee against the fraudulent grantor in possession. In both the fraudulent conveyance was enforced between the parties.

In the case of Rochelle v. Harrison, 8 Port., 351, the supreme court of Alabama went further, and enforced a fraudulent conveyance of slaves at the suit of the vendee, where there was no consideration given, no instrument of writing evidencing the conveyance, and no actual delivery, but a mere written acknowledgment of the grantor that he held the slaves as a hirer from the grantee.

Whilst we do not decide that there are no cases in which the courts will refuse to enforce a fraudulent conveyance against the vendor in possession at the suit of his vendee, we think that the one now under consideration was properly sustained under the facts and circumstances proved upon the trial.

The verdict of the jury does not find the separate value of each article recovered, but the aggregate value of the whole. This was erroneous, as was decided in the case of Blakely v. Duncan, 4 Tex., 185. The defendant should have the privilege of returning any one or more of the articles recovered, instead of paying its value, and *vice versa;* but this would be denied him unless the separate value of each article was found.

The charge of the court, authorizing the jury to find more than the value of the property, in order to insure its return, was erroneous, as has already been decided at this term in the case of Benson v. Pait.* We are unable to determine whether it did or not have any effect upon the finding of the jury in this case, as the value placed by the jury upon each article sued for is not stated in the verdict. The erroneous charge, however, may have influenced them in estimating the price at which the appellants might retain some one or more of the articles, and is therefore an error which is itself fatal to the judgment.

For this error, and the failure of the jury to find the separate value of each article recovered, the judgment is reversed, and the cause　　REMANDED.

*The record of this case was not furnished to the *Reporter.*