## TAPPAN STEVENS v. SUSAN MORSE & AL.

An unrecorded deed is good against everybody, except subsequent claimants under the same immediate grantor without notice of the first conveyance.

The record of a fraudulent deed is sufficient notice to subsequent purchasers from the fraudulent grantor.

A conveyance without consideration made to defraud the creditors of the grantor, is valid against a subsequent purchaser for a valuable and sufficient consideration, with notice of the first conveyance.

Under a plea cf *non tenure*, if it appears that the defendant is tenant in common with another person, the plaintiff's writ will be maintained for the share of the defendant so held in common, and will abate for the share of the other tenant in common.

WRIT of entry for several tracts of land in Rumney. Susan Morse died after the commencement of the suit, and before the pleas were pleaded.

Stephen S. Morse, the other defendant, as to part of the demanded premises, pleaded *non tenure*, and *nul disseizin* as to the residue. The plaintiff joined issue on the plea of *nul disseizin*, and replied to the plea of non tenure, affirming the *seizin* of the defendant as alleged in the writ.

The demandant claimed title under a mortgage to himself from Timothy Morse, dated Aug. 27, 1860, acknowledged the same day at Newbury, Vt., before C. B. Lesley, who subscribed the certificate of acknowledgment as a Master in Chancery, recorded Oct. 28, 1860. There was no evidence that Lesley had any authority to receive the acknowledgment of the deed except his signing the certificate as a Master in Chancery.

The mortgage was given to secure a note for $1000, dated Nov. 27, 1857, for money lent by the demandant to H. B. Morse and C. M. Morse; was signed by them and Timothy Morse as surety, and payable to plaintiff or order on demand with interest annually.

The title of Timothy Morse was derived from Robert Morse, under three deeds, one of all the premises, dated January 1, 1857, acknowledged the same day, and recorded January 2, 1857; one covering part of the premises dated Dec. 28, 1854, acknowledged and recorded the same day, and one of all the premises dated July 11, 1859, acknowledged the same day and recorded November 8, 1859.

The plaintiff gave evidence that Robert Morse was in possession of the premises previous to his conveyance to Timothy Morse, and also evidence that Stephen S. Morse was in possession of the part of the premises, to which he pleaded *non tenure*.

The defendant objected to the mortgage deed of Timothy Morse, that it was not acknowledged before an officer authorized by law to receive the acknowledgment. On this point, the court ruled that without acknowledgment or record the deed was sufficient to transfer the seizin and title of Timothy Morse to the plaintiff, and that the defendant was not in a situation to make the objection till he showed some title. To which the defendant excepted.

The defendant then offered to prove that, after the several conveyances of Robert Morse to Timothy Morse, on the 21st of September, 1862, Robert Morse for a valuable and sufficient consideration, conveyed to the

defendant that part of the premises to which *nul disseizin* was pleaded ; and that the conveyances of Robert Morse to Timothy Morse were made to defraud the creditors of Robert Morse and without consideration ; but did not offer to show that the defendant, when he took his mortgage, had notice of the fraud.   The court ruled that the facts thus offered to be proved could not be a defence to the action ; to which the defendant excepted.

In answer to the plaintiff's evidence of possession by the defendant of the part of the premises to which *non tenure* was pleaded, the defendant offered to prove that he was not sole tenant thereof, but tenant in common with one Peabody A. Morse.   The court ruled that in such a state of facts, the plaintiff's writ would be maintained for the share of the defendant so held in common, and would abate for the share of the other tenant in common, to which both parties excepted.

A verdict was taken by consent for the plaintiff, subject to the opinion of the court.

*Pike* and *Bryant*, for plaintiff.

*Hibbard, Quincy* and *Carpenter*, for defendant.

SMITH, J.   The ruling, "that without acknowledgment or record, the deed was sufficient to transfer the seizin and title of Timothy Morse to the plaintiff," was correct.   If the plaintiff's deed is to be regarded as unacknowledged, and therefore not properly recorded, that does not prevent him from occupying the same position his immediate grantor would have occupied in a controversy with this defendant, who is not a creditor of, or a subsequent purchaser from, such grantor.

An unrecorded deed, being good against the grantor and his heirs, must operate to convey to the grantee all the grantor's title, as against all persons who do not claim under the same grantor.   If the title has passed from the grantor without vesting in his grantee, "it is either extinguished or in perpetual abeyance, so that no person can question the right of him who may happen to be in possession, though without a color of title," thus, in effect, vesting the estate in a trespasser or casual occupant, by the "mere circumstance of occupancy."

Except as concerns persons who have "acquired an advantage under the recording acts," it is not important whether the plaintiff's deed was ever acknowledged or recorded.   To hold otherwise would be to reward the defendant for a neglect of the plaintiff by which he could in no manner have been damnified or prejudiced ; see *Montgomery* v. *Dorion*, 6 N. H. 250 ; *Odiorne* v. *Mason*, 9 N. H. 24.

Regarding the plaintiff as substituted by the unrecorded deed to all the rights of his immediate grantor, Timothy Morse, the next question is, whether this defendant has a better title than Timothy Morse.   The defendant must be held to have had notice of the conveyance from Robert Morse to Timothy Morse at the time he himself purchased from Robert Morse.   The record of those conveyances furnished constructive notice to all subsequent purchasers from Robert Morse, and no good

reason is perceived why this should not be just as effectual as actual notice. If the defendant did not, in fact, know of the prior conveyances made by his grantor, his ignorance is owing to "culpable negligence in not searching the registry." The scope and purpose of our registration acts "are to preserve a record of title which shall inform all the world of its condition. If a party be not bound to take notice of the record of the title of the one under whom he claims, then the registering of deeds, for most purposes would be wholly useless." *Vansant* v. *Davies*, 6 Ohio N. S. 52; *Warren, Lessee,* v. *Richardson,* cited in Reporter's note, 6 Md. pp. 272–4; *Tripe* v. *Marcy,* 39 N. H. 439; *Beal* v. *Warren,* 2 Gray 447, *Thomas, J.,* p. 450.

It is worthy of remark that the purpose of our provincial recording act, passed in the 13th William III., is expressed to be "for preventing fraudulent and uncertain sales of houses and lands, and to the intent it may be the better known what title or interest persons have in or to such estates as they shall offer to sale ;" and that one section of the act concludes by providing that filing in the records a copy of a deed which the grantor refuses to acknowledge, "shall be accounted sufficient caution to every other person or persons against purchasing the estate in such deed mentioned to be granted."

Under this view of the effect of registry, the point in issue in this case, is, whether a conveyance without consideration made to defraud the creditors of the grantor, is void against a subsequent purchaser for a valuable and sufficient consideration, with notice of the first conveyance.

The fact that the first conveyance was without consideration, would not, standing alone, be sufficient cause to set it aside in favor of this defendant. The principal arguments in support of this position are well stated in the able opinion of *Thomas, J.,* in *Beal* v. *Warren,* 2 Gray 447 ; see, also, 4 Kent's Com. (9th ed.) 542, note *d.*

Does the additional fact that the conveyance was made to defraud the creditors of the grantor, give any greater right to the subsequent purchaser with notice ?

The statute 27th Elizabeth, c. 4, invalidates only such conveyances as are made with the express design to injure, or defraud, subsequent purchasers. It enacts "that all and every conveyance made, for the intent and of the purpose to defraud and deceive such person or persons, * * * as have purchased or shall afterwards purchase, * * * the same lands so formerly conveyed, * * * shall be deemed and taken only as against that person and persons," and those claiming under them, * * * "to be utterly void; * * *."

The defendant does not offer to prove that he is within the provision of this statute. He offers to show that the conveyance to Timothy Morse was made to defraud creditors, but this cannot avail one who is not a creditor of, but a subsequent purchaser from, Robert Morse. The courts have gone far enough in extending the statute 13th Elizabeth, c. 5, to protect subsequent creditors, and cannot, without doing violence to its language, stretch it to include the case of subsequent purchasers.

Any attempt to support the authorities which hold that a conveyance

made to defraud creditors is void, not only as against creditors, but also as against subsequent purchasers, can be based only on two grounds; viz., 1st. that an intent to defraud subsequent purchasers is identical with, or conclusively to be presumed from, an intent to defraud existing creditors, and that the conveyance is therefore void under the 27th Eliz-abeth, c. 4; or, 2d. that a conveyance to defraud creditors is so utterly void that no rights can be acquired under it as against any person what-ever, and that the conveyance is therefore void under the 13th Eliza-beth, c. 5.

The first ground is untenable. An intent to defraud creditors is not identical in law with an intent to defraud subsequent purchasers; *Bart-lett, J.*, in *Doolittle* v. *Lyman*, 44 N. H. 608. The two statutes of the 13th and 27th Elizabeth, were aimed at different evils. If "the de-sign of passing each statute," had "been the same, the latter statute would have been deemed unnecessary, and therefore would never have been enacted;" *Kennedy, J.*, in *Foster* v. *Walton*, 5 Watts 378, p. 379. Neither is the existence of one of these intents a conclusive, nor, as we think, a *prima facie*, presumption, from proof of the exist-ence of the other.

In Roberts on Voluntary and Fraudulent Conveyances, 51–2, it is said: "If the design of the person conveying, be to defraud his credi-tors, any intention of fraud with respect to a purchaser, becomes by so much the less presumable; and though it may be true, that distressful circumstances are a general temptation to dishonesty, yet, the purview of the statute looks only to a particular intent, and that intent is only discernible in the natural concert of motives and actions. The contrary reasoning confounds the operation and objects of the two statutes, and converts the evidence of intent under the one, into an evidence of intent under the other, where the two several intents have distinct and diver-gent aims." This doctrine was endorsed by *Nelson, C. J.*, in *Sanger* v. *Eastwood*, 19 Wend. 516, p. 515, as follows: "Proof of such a fact, as observed by Mr. Roberts, ought rather to prejudice than advance the claims of a purchaser." So, in *Foster* v. *Walton, ubi supra, Ken-nedy, J.*, p. 379, said: "Indeed, the very fact of its being made with an intent to defraud the creditor of the grantor, goes to show that it was not made on purpose to defraud a purchaser merely of the estate."

The second ground is equally untenable. The case of a subsequent purchaser does not fall within the provisions of the statute, 13th Eliza-beth, c. 5. That statute invalidates fraudulent conveyances "only as against" those persons "whose actions, suits, debts, accounts, damages, penalties, forfeitures, heriots, mortuaries and reliefs, by such guileful aversions or fraudulent devices and practices, as is aforesaid, are, shall or might be, in any wise disturbed, hindered, delayed, or defrauded."

Under this statute "a deed made to defraud creditors is only void as against creditors," "and then only to the extent in which it may be nec-essary to deal with the conveyed estate for their satisfaction. To this extent, and to this only, it is treated as if it had not been made. To every other purpose it is good. Satisfy the creditors and the convey-ance stands." Story on Equity, sec. 171. When such a conveyance is

impeached by creditors, it is avoided only from the time they commence proceedings. *Jones* v. *Bryant,* 13 N. H. 53.

Seeing, then, that conveyances are invalidated under the 13th Elizabeth, so far as creditors are concerned, only when actually attacked by creditors, and then only so far as necessary to satisfy the claim of the creditors, and repair the wrong done them, how can it be contended that under this statute of 13th Elizabeth, conveyances are wholly invalidated as against subsequent purchasers, who are not among the class of persons enumerated in the statute? A purchaser, in terms, is not mentioned in the 13th Elizabeth, and the circumstance of the statute of 27th Elizabeth having been subsequently passed, "shows conclusively that he was not considered as being included within the terms of the first statute;" *Kennedy, J.,* in *Foster* v. *Walton, ubi supra,* p. 339.

But, apart from these considerations, there is a very serious objection to the doctrine favorable to the defendant. It is the well settled and salutary rule of law that a fraudulent conveyance is binding on the grantor and his heirs. The grantor can recover neither the land itself, nor its value. This rule has been adopted "with a view to deter from, and discourage such fraudulent acts." But the adoption of the doctrine that a purchaser for value, with notice from the fraudulent grantor, can take the land away from the fraudulent grantee, amounts to a nullification of the preceding rule. For this would give back to the grantor, not, indeed, his land, but what is the same thing, its value. "If he can sell the land to whom he pleases, he is in effect the owner of it still, and has forfeited or lost nothing by his fraudulent conduct." *Kennedy, J.,* in *Foster* v. *Walton, ubi supra,* p. 381.

The grantor can thus, practically, "reclaim the property by proving his own fraud." He is thus enabled to do by indirect means what he is "prohibited from effecting directly," giving to another a power to do what he cannot do himself, (see 2 Gray p. 456,) and for thus conferring this power he can receive a compensation equal in amount to the value of the property he parted with by the fraudulent conveyance.

Such a doctrine would encourage, rather than repress, conveyances to defraud creditors, for it diminishes the chance of loss to the debtor. If his creditors contest the conveyance and hold the land, he is no worse off than if he had made no conveyance. His land has been applied to the payment of his debts, but that would inevitably have been the case if he had made no conveyance. On the other hand, if the fraudulent conveyance answers its purpose of keeping off the creditors, the debtor avoids the payment of his debts, and still realizes the value of his property.

It is obvious that this doctrine not only gives great aid and comfort to fraudulent grantors, but also opens a wide door for collusion between such grantors and those who claim as subsequent purchasers from them. It also leaves uncertain the tenure of property. If the grantor can make a conveyance which passes the land one year after the first conveyance, he can do it nineteen years after, if the first grantee has not in the meantime conveyed to a *bona fide* purchaser for value without notice of the original fraud.

We think the better view is, that the grantor having no estate left in himself, cannot pass any to a purchaser with notice. The law has no such regard for him as to enable him either directly or indirectly, to annul his own fraudulent conveyance, "with a view to promote his interest." A sale by him to purchasers without notice, is set aside out of regard to the innocent purchasers, not to the grantor. *Kennedy, J.,* in *Foster* v. *Walton, ubi supra,* p. 381.

The authorities on this subject are conflicting. In Massachusetts the opposite doctrine to that here laid down is maintained. *Ricker* v. *Ham,* 14 Mass. 137; *Clapp* v. *Leatherbee,* 18 Pick. 131. Other authorities to the same effect are cited in 1 Am. Lead. Cases, 4th ed. p. 49, where an attempt is made to reconcile the cases on this subject by a distinction which we think unsound, and not founded in fact. The view we have taken is sustained by *Foster* v. *Walton,* 5 Watts 378; also by decisions in Ohio and Texas, in each of which States, we believe, the substance of the two statutes of the 13th and 27th Elizabeth has been re-enacted in one statute, (the Texas statute extending to conveyances of slaves;) *Robinson* v. *Martel,* 11 Texas 149; *Fowler* v. *Stoneum,* 11 Texas 478; *Vansant* v. *Davies,* 6 Ohio N. S. 52. *Mosely* v. *Mosely,* 15 N. Y. Court of Appeals 334, seems to be an authority on the same side; see, also, *Lessee of Burgett* v. *Burgett,* 1 Hammond, Ohio, 469; *Douglas* v. *Dunlap,* 10 Ohio 162; *Teasdale* v. *Atkinson,* 2 Brevard 48. The intimation in the head-note to *Coppage* v. *Barrett,* 36 Miss. 621, that a purchaser with notice would hold against a fraudulent grantee who had not paid a valuable consideration, does not seem to be warranted by the opinion; *Handy, J.,* saying, p. 646, that a purchaser for value *and without notice* would prevail against a prior conveyance, if it was merely colorable and without valuable consideration.

In the view we have taken, it is unnecessary to consider whether the plaintiff stands in a better position than his immediate grantor as against this defendant.

The rulings in reference to the plea of *non-tenure* were correct. Although the plaintiff, in his writ, counted upon an entire seizin of the whole estate, judgment can be rendered in his favor for an undivided moiety. *Somes* v. *Skinner,* 3 Pick. 51; *Dewey* v. *Brown,* 2 Pick. 387; Stearns on Real Actions, 2d Ed., 219.

As the plaintiff, who claimed the whole, is allowed to recover half, the defendant, who pleaded that he was not in possession of the premises, may maintain a partial defence by showing that he holds only an undivided half. If the defendant had been shown to be in possession of the entire demanded premises under a title not paramount to the plaintiff's mortgage, the authorities cited by plaintiff would be applicable, and the law would conclusively presume the defendant to be a disseizor, claiming a freehold in the whole. But, in order to raise this presumption, it must first be shown that the defendant is in possession, and he may show that he is in possession of only an undivided half, thereby disproving the allegation that he claims a freehold in the other half.

*Judgment on the verdict.*