## C. ANNA DITTMAN v. WEISS BROS.

### No. 264.

1. **Conveyances in Fraud of Creditors.**

It is well settled, as a general rule, that one who claims property which has been conveyed in fraud of creditors by a title derived from the grantee subsequent to the fraudulent conveyance, can not maintain an action to set it aside. This applies to administrators and to assignees for benefit of creditors 620

2. **Conveyance in Contemplation of an Assignment.**

The ninth section of the Act of March 24, 1879, applied only to conveyances in contemplation of an assignment, and excludes the idea that other fraudulent conveyances were intended to be embraced within its provisions. As to such other conveyances, the assignee is powerless...................... 621

3. **What Passes by an Assignment.**

In the first section of said act (March 24, 1879), the assignment is given the effect to pass all the property of the assignor to the assignee, whether mentioned or not. This does not pass title to property which the assignor had previously conveyed, though in fraud of creditors ...................... 621

4. **Creditors May Sue.**

While the act in question neither authorizes the assignee to sue to set aside a fraudulent conveyance which was not made in contemplation of the assignment, nor expressly authorizes the creditors to do so, yet it was not the purpose of the law to deprive the creditors of that right......... ....... 622

5. **Creditors' Bill to Subject Property.**

That creditors may bring suit to subject property, fraudulently conveyed by the debtor, to the payment of their debts, without first having acquired a lien thereon, is the settled law of this State ..........................:...... 622

6. **Same—Assignment Law.**

Creditors of a debtor who made a statutory assignment are not restricted to the remedy given in the statute to subject property fraudulently assigned. They may pursue the remedy given by the statute in conjunction with that given by the statute of frauds....................................616, 622

QUESTION CERTIFIED from Court of Civil Appeals for First District, in a case appealed from Colorado County.

The statement and question certified are here given.

There arises in the above entitled cause, pending before this court, an issue of law which it is deemed advisable to certify to the Supreme Court for adjudication:

H. Amthor, on the 13th day of December, 1887, made a deed of assignment for the benefit of such of his creditors as should agree to accept their proportional share of his estate and release him from further liability. The assignee was L. Kauffman, who accepted the trust. On the 6th of December the assignor, Amthor, conveyed a large portion of his estate, consisting of both real and personal property, to C. A. Dittman, and on the 12th of the same month he conveyed to him another large amount of land. The appellees, on the 7th of February, 1888, instituted suit in the District Court of Colorado County against

C. A. Dittman, alleging that they were accepting creditors of Amthor under the aforesaid deed of assignment, and that they had applied to the assignee, Kauffman, to bring suit against Dittman, but he had refused to do so, and that they had, after indemnifying the assignee against costs, brought suit for the benefit of all the accepting creditors. The petition charged, that the conveyances from Amthor to Dittman were executed just prior to the execution of the deed of assignment, and that said conveyances were made in contemplation of insolvency on the part of Amthor, with the intent to hinder, delay, and defraud his creditors; that at the time of the execution of said deeds, it was understood and agreed between them that no title to any of the property should pass to Dittman, but that the title should remain in Amthor, and that Dittman's name should be used to secrete and conceal said property from the creditors of the said Amthor; and that said Dittman knowingly and deliberately entered into a conspiracy with Amthor, to aid and assist him in his fraudulent scheme.

The petition further charged, that if Amthor was in fact indebted to Dittman, which plaintiffs denied, the said conveyances were intended as mortgages, and that the property so conveyed largely exceeded in value any indebtedness due from Amthor to Dittman. Plaintiffs also charged, that if the said deeds were intended as absolute conveyances, and if Amthor was in fact indebted to Dittman at the time of their execution, the consideration for said sales was the indebtedness of Amthor to Dittman, and that the consideration was inadequate, and that the conveyances were made by Amthor in contemplation of the assignment made by him on the 13th of December, 1887, and that with the intent to give one creditor a preference over another, in contravention of the statute providing for and regulating assignments; and that Amthor was insolvent when he executed said conveyances; and that his insolvency was known to Dittman. Plaintiffs prayed that said deed of conveyance be cancelled, and that all of the property conveyed to Dittman be decreed to the assignee, Kauffman, for the benefit of the consenting creditors under the assignment. And there was also a prayer in the alternative, that if the property was found to be mortgaged to Dittman, that it be decreed to be sold, and that the balance of the moneys arising from the sale remaining after satisfying Dittman's lien, be turned over to the assignee, Kauffman. These averments, if sustained by the evidence, seem to present a case of first impression, and the following question is therefore certified:

If the conveyances of the 6th and 12th of December, 1887, are void under the statute of frauds, as to creditors of the vendor, is it essential, as a prerequisite to recovery by the plaintiffs, that they were made by Amthor, in contemplation of the assignment made by him on the 13th of December, 1887, and that Dittman had either actual or constructive knowledge of such intention on part of Amthor when the

deeds were made and delivered by the latter to him? Or in other words, are the plaintiffs in this action restricted to the remedy given them under the statute authorizing and regulating assignments by insolvents, or may they pursue the remedy given by that statute, in conjunction with that given by the statute of frauds?

*George McCormick, W. S. Delany,* and *M. Kennon,* for appellant.— This cause comes to this court on a certified question from the Court of Civil Appeals.

Weiss Bros., the plaintiffs in the court below, were accepting creditors of the assignor, Amthor, and brought the suit in the name of the assignee for the benefit of all consenting creditors, and prayed that the deeds from Amthor to Dittman be cancelled, and that all the property conveyed to Dittman be decreed to the assignee, Kauffman, for the benefit of the consenting creditors under the assignment; and there was also a prayer in the alternative, that if the property was found to be mortgaged to Dittman, that it be decreed to be sold, and the balance of the moneys arising from the sale, remaining after satisfying Dittman's lien, be turned over to the assignee, Kauffman. It will be observed that there is no allegation by plaintiffs that they had a lien of any kind on the property conveyed by Amthor to Dittman.

We respectfully submit the following reasons why the plaintiffs must be confined to a recovery on the allegation that Amthor made the transfers to Dittman in contemplation of the assignment, etc.:

1. The suit is brought in the name of the assignee for the benefit of all the consenting creditors, and the prayer is, that the deeds be cancelled and the title to the property be vested in the assignee for the benefit of such creditors, to be administered under the assignment law. The only property that passes to the assignee by the assignment, which has previously been transferred by the assignor, is such property as has been so transferred, "previous to and in contemplation of the assignment, with the intent or design to defeat, delay, or defraud the creditors, or to give preference to one creditor over another." Surely, neither the assignee, nor the creditors in his name, can sue to recover property that does not pass to the assignee by the assignment. It has been settled by this court, in the case of Simmons Hardware Company v. Kauffman & Runge, "that in order to avoid a transfer or preference on the ground that it is made or given in contravention of the provisions of section 9 of the assignment law, the transfer must have been executed or the preference given with the intent then formed to make the assignment," etc. This being the law, the assignee has no standing in court unless he alleges that the property was transferred previous to and in contemplation of the assignment.

2. The rights of a purchaser under the statute of frauds and the assignment law are widely different. Under the former a creditor of

an insolvent debtor may take property of the debtor for his claim, notwithstanding the transaction results in a preference and hinders other creditors of the insolvent. This doctrine is so well settled that we refer to no authorities on the point. Under the assignment law, however, the debtor, if he contemplates the assignment, has no right "to give preference to one creditor over another;" so that if Amthor made the transfer to Dittman on the 6th of December in payment of a debt, under the statute of frauds Dittman could successfully defend the action, notwithstanding he may have known of Amthor's insolvency; for, under this law, the intent to hinder, delay, or defraud creditors can not exist where the purpose is to appropriate the property of the debtor or the proceeds of its fair value to the payment of one or more just debts (Ellis v. Valentine, 65 Texas, 532); but if the transfer was made to Dittman in contemplation of the assignment, Dittman could not defend on the ground that he was a purchaser for value, if he knew of Amthor's intent when the property was conveyed, and that intent was to prefer Dittman over other creditors. We call attention of the court to this phase of the question, because it actually arises in this particular case, Dittman defending the transfer of the 6th of December on the ground that he purchased the property in settlement of debts due him by Amthor.

3. The plaintiffs can maintain their action under the assignment law only, for the further reason, that "a fraudulent transfer is valid against all persons except those who proceed to appropriate the property by due course of law to the satisfaction of the grantor's debts. As it is valid against a simple contract creditor, such creditor can not ask the aid of a court of equity to set aside the transfer, for it does not interfere with his rights. Equity has jurisdiction of fraud, but it does not collect debts. A creditor must establish his demand at law, and obtain a lien upon the property, before the transfer interferes with his rights or he has any title to claim relief in equity. No creditor can be said to be delayed, hindered, or defrauded by any conveyance until some property out of which he has a specific right to be satisfied is withdrawn from his reach by a fraudulent conveyance. Such specific right does not exist until he has bound the property by judgment, or by judgment and execution, as the case may be, and has shown that he is defrauded by the conveyance in consequence of not being able to procure satisfaction of his debt in due course of law. Then, and then only, he acquires a specific right to be satisfied out of the property conveyed, and shows that he is a creditor, and is delayed, hindered, and defrauded by the conveyance." Cassaday v. Anderson, 53 Texas, 527, and authorities there cited.

*McLemore & McLemore*, for appellees.—The question certified to this honorable court by the Court of Civil Appeals for the First Dis-

trict is in effect as follows: Are creditors, by the Act of March 24, 1879, regulating assignments for the benefit of creditors, restricted by article 65i, Sayles' Statutes, to procedure under that statute to set aside conveyances made "previous to and in contemplation of the assignment, with the intent or design to defeat, delay, or defraud creditors," or may they proceed also under and by virtue of the provisions of article 2465, in effect, that "every conveyance or transfer of any real estate, given with intent to delay, hinder, or defraud creditors, shall, as to such creditors, be void?"

We contend, that the question should be answered in the affirmative, and in support of our opinion we beg to submit the following argument and authorities: The apparent distinction between the respective statutes (article 65i and 2465) seems to be that under the assignment statute "contemplation of assignment, with the intent to defeat, delay, or defraud creditors," at the time of the conveyances or transfers of the property sought to be recovered, must be alleged and proven in order to have the sales set aside; while under the statute of frauds, the "intention" of delaying hindering, or defrauding the creditors would be sufficient proof to authorize the court or jury to set them aside.

Upon a closer reading of the statute of assignment, you will find that the intention of the grantor in making the conveyances, and not what he has in contemplation, vitiates the transactions; for in article 65i we find the following language: "But if it shall appear in such action that the purchaser of any such property bought the same of assignor in good faith and for a valuable consideration, and without any reason to believe that the debtor was conveying or transferring the same with the intent or design aforesaid, he shall have good and valid title to the property." Does it not appear, and is it not fair to presume, that the object of that statute is to declare void all conveyances made with the intention of defeating, delaying, or defrauding creditors, and that the contemplation of assignment does not govern or control the transaction? This statute provides, that the assignee, where such a state of facts exists, may sue for and recover the property so conveyed, and cause the same to be applied for the benefit of creditors; or, in a case of his refusal or neglect, the creditors or creditor may in his name undertake the proceedings.

Prior to the enactment of the assignment statute, there is no doubt but that creditors could undertake proceedings to set aside conveyances made within the provision of this statute of frauds, and that this right is still conferred upon them by that statute there can be no contention, unless, by the enactment of the assignment statute, the Legislature intended and it operated a repeal of the statute of frauds. The question as to the effect of the statute of assignments upon the statute of frauds has been before this honorable court in the case of Wagon Works v.

Tidball, Van Zandt & Co., 59 Texas, 292, wherein it was expressly held, that the Act of March, 1879, regulating assignments, did not in any way repeal or conflict with the statute of frauds. Then, for the purposes of this question, these two statutes are in effect the same, save that the assignment statute confers upon the assignee a right which before that time he did not possess, i. e., the right to undertake proceedings to recover property conveyed or transferred by his assignor with the intention of defeating, delaying, or defrauding his creditors.

"It is a general rule of law, that a person can not by any voluntary act of his own transfer to another a right which he does not himself possess. A fraudulent transfer of property by a debtor, made with the intent to defeat creditors, is conclusive upon the debtor. No logical theory can be easily framed upon which it can be said that an assignment, wholly voluntary on the debtor's part, vests in his assignee the right to attack fraudulent transfers. Consequently it has been held that the right to impeach or set aside a conveyance which is fraudulent and void against creditors of the grantor, did not pass to the assignee of the grantor by a voluntary general assignment in trust for the benfit of creditors subsequently executed, and unaffected by any statute in force at the time." Wait on Fraud. Con., 115; Keller v. Smalley, 63 Texas, 520, and authorities cited.

Before the enactment of the assignment statute, in March, 1879, the assignee had no right or authority to bring a suit for the recovery of the lands fraudulently conveyed "with the intent or design aforesaid," but this right was conferred upon him, and it was the intention of the Legislature and that statute to confer upon him the same rights that creditors generally had under the statute of frauds.

As to the right of creditors to bring suits to set aside conveyances made with the "intent to hinder, delay, or defraud creditors," we cite you to the reports generally. The books are full of just such suits. Sanger Bros. v. Colbert, 84 Texas, 671; Ellis v. Valentine, 65 Texas, 548; Traylor v. Townsend, 61 Texas, 146; Brown v. Cactus Co., 64 Texas, 396.

Could an assignee or creditor suing in his name recover property made in "contemplation of an assignment" without the intention on the part of the grantor to defeat, delay, or defraud his creditors? We think not. Is it necessary that there should be a combination of the two purposes? Could an assignee recover property conveyed with the intention of delaying, hindering, or defrauding his creditors, and not in contemplation of the assignment thereafter made? We think he could. If this be the intention and construction of this statute, then the question is answered; for under that statute, whatever rights or powers are conferred upon an assignee, the creditors may enforce in his name, in case of his refusal or neglect to proceed. Blum v. Welborne, 58 Texas, 162.

This case was before the Court of Civil Appeals once before (4 Texas Civil Appeals, 35), and in the opinion handed down on that appeal the law applicable to this case was fully discussed, and the second trial in the court below was had in accordance with the rules laid down in that opinion. "Facts were charged," says Justice Williams in his opinion, "which, if established, would avoid the conveyance under the statute of frauds, without reference to the assignment law. The transactions were attacked on both grounds. Though the deeds may not have been in contemplation of the assignment, and with the specific intent charged, they may still have been fraudulent against creditors under the general rules of law on that subject."

What better authority could the court below have had to try and submit the case under the law of the statute of frauds? And where can we find the question propounded to your honorable body more clearly and definitely answered than in the opinion of Justice Williams quoted above? It states the law positively and correctly, and we submit most respectfully that the rights of creditors are not abridged or restricted by the enactment of the assignment statute.

GAINES, CHIEF JUSTICE.—It is well settled, as a general rule, that one who claims property which has been conveyed in fraud of creditors, by a title derived from the grantor subsequent to the conveyance, can not maintain an action to set it aside. In accordance with this rule, it has been repeatedly held in this court, that the administrator of the estate of a deceased person can not recover property fraudulently conveyed by his intestate. Wilson v. Demander, 71 Texas, 603, and cases cited. Since the assignee in a voluntary assignment for the benefit of creditors occupies in this particular no better position than an administrator, it is also held, as we think by the great weight of authority, that he can not maintain an action to set aside fraudulent conveyances made by the assignee before the assignment. Where the assignee is insolvent and the assignment is made under a statute for the benefit of all his creditors, the authorities seem not to be uniform. Some courts hold, that since he is in a sense the representative of the creditors, he may maintain the action. But in Keller v. Smalley, 63 Texas, 512, the following language from Wait on Fraudulent Conveyances is quoted with approval: "Consequently it has been held, that the right to impeach or set aside a mortgage which is fraudulent and void as against the creditors of the mortgagor did not pass to the assignee of the mortgagor by a voluntary general assignment in trust for the benefit of creditors subsequently executed, and unaffected by any statute in force at the time," and the opinion of the court in the case cited seems to have been, that the statute of this State concerning assignments did not confer the right. We think, however, that the determination of the point was not necessary to a decision of the case. But

we are also of opinion that the conclusion is correct. The only provision of the Act of March 24, 1879, in relation to assignments for the benefit of creditors which bears directly upon this question is contained in the ninth section, and reads as follows: "All property conveyed or transferred by the assignor previous to and in contemplation of the assignment, with the intent or design to defeat, delay, or defraud creditors, or to give preference to one creditor over another, shall pass to the assignee by the assignment, notwithstanding such transfer; and the assignee, or in case of his neglect or refusal, any creditor or creditors may, in his name, upon securing such assignee against cost or liability, sue for, recover, collect, and cause the same to be applied for the benefit of creditors as other property belonging to the debtor's estate in the hands of the assignee; but if it shall appear, in such action, that the purchaser of any such property bought the same of the assignee in good faith and for a valuable consideration, and without any reason to believe that the debtor was conveying or transferring the same with the intent or design aforesaid, such purchaser shall be held to have acquired, as against the assignee and creditors aforesaid, a good and valid title to such property." The section quoted only applies in express terms to conveyances made in contemplation of an assignment, and excludes the idea that other fraudulent conveyances were intended to be embraced within its provisions. The first section of the act gives the assignment the effect of transferring all the property of the assignor to the assignee, whether mentioned or not; but comprehensive as this provision is, it is not sufficient to pass the title of property which the former had previously conveyed, though in fraud of creditors. A fraudulent conveyance is valid as between the grantor and grantee. Though void as to creditors, they can not avoid it, except by legal proceedings. Miller v. Koertge, 70 Texas, 162. The grantor, even when acting in their behalf, can not do so.

So much of section 9 as empowers the assignee to sue to set aside conveyances which give preferences, and which have been executed in contemplation of the assignment, is necessary in order to effect the purposes of the act. But why it should have provided that he could sue for property, when fraudulently conveyed in contemplation of making the assignment, while at the time it did not confer the power to recover other property conveyed in fraud of creditors, it is difficult to see. It was certainly not the purpose of the Legislature to enable a fraudulent grantor to assign and thereby to deprive his creditors of the right to subject to the payment of their debts property previously conveyed in fraud of their rights. The act was intended rather to enlarge the rights of the creditors in general and to effect a prompt and equitable distribution of all the assignor's assets; and hence an intention in any manner to restrict the rights of creditors to subject all the property of the assignor which they are entitled to under the statutes in rela-

tion to fraudulent conveyances, to subject to the payment of their debts, can not be imputed to the Legislature. While it must be held that the act in question neither authorizes the assignee to sue to set aside a fraudulent conveyance which was not made in contemplation of the assignment, and that it does not expressly authorize the creditors to do so, we are of the opinion, for the reasons given, that it was not the purpose of the law to deprive the creditors of that right. That creditors may bring suit to subject property fraudulently conveyed by the debtor, to the payment of their debts, without having first acquired a lien thereon, is the settled law in this State (Anderson v. Cassaday, 53 Texas, 527; Shirley v. Railway, 78 Texas, 131); and that the creditors of a deceased person may impeach the fraudulent conveyance of the intestate, though the administrator may not, is equally well settled.

We conclude, that the question certified should be answered in the negative.

Delivered April 1, 1895.