ROGERS v. ROGERS et al. (No. 6496.)

(Court of Civil Appeals of Texas. San Antonio. March 16, 1921. Rehearing Denied April 30, 1921.)

1. Contracts ⚙—113(4)—Deed to defraud grantor's tenant·not canceled for benefit of those claiming under grantor.

Where a mother conveyed leased property to a son to defraud lessee, who could be removed on a sale of the property, the scheme being that the son reconvey after danger of suit was past, a court of equity after the death of the mother will not set aside the sale at the instance of or for the benefit of other children claiming under a will executed by the ·mother, and it is immaterial that the deed was without consideration.

2. Landlord and tenant ⚙—95—Conveyance made for sole purpose of terminating lease fraudulent as matter of law.

The conveyance of property which was subject to a lease providing that it could be terminated on a sale of the premises for the sole purpose of terminating the lease, property to be reconveyed after danger of suit by the lessee was past, was fraudulent as a matter of law.

3. Appeal and error ⚙—171(1)—Parties committed to theories and facts presented.

On appeal, parties are irrevocably committed to the theories and facts presented by them respectively in the court below and on appeal.

On Motion for Rehearing.

4. Costs ⚙—45—Appellant held properly relieved of costs incurred by his impleading children of deceased plaintiff on decision reversing and rendering judgment.

In an action by several against a brother to set aside a deed executed by a parent to the defendant, wherein children of a deceased plaintiff were impleaded by defendant and judgment ·was in favor of plaintiffs, a decision of the appellate court reversing the judgment and rendering one for defendant was not erroneous because upsetting an order of the trial court taxing defendant with an item allowed guardian ad litem of children as attorney's fees.

5. Landlord and tenant ⚙—95—Evidence held to show deed executed to defraud.

In an action to set aside a conveyance by plaintiff's mother to their brother, evidence *held* to show that deed was executed with intent to defraud and oust a lessee.

Appeal from District Court, Nueces County; W. B. Hopkins, Judge.

Action by T. C. Rogers and another against Manuel Rogers and others. Judgment for plaintiffs, and named defendant appeals. Reversed and rendered.

J. C. Scott, of Corpus Christi, for appellant.

James M. Taylor and Pope & Sutherland, all of Corpus Christi, for appellees.

SMITH, J. Mrs. Julia Rogers, a widow, possessed a large estate, including the Majestic Hotel property, situated on lots 1 and 2, in block 12, "in the beach part of" the city of Corpus Christi. Some time prior to August 28, 1906, she leased the hotel property to W. A. Fitch for a period of one or three years, with the privilege to Fitch of renewal for four years longer, but with the stipulation that, in event of the sale of the property at any time by Mrs. Rogers, the purchaser at such sale could terminate the lease upon 90 days' written notice to Fitch. On August 28, 1906, Mrs. Rogers executed and delivered to her son, Manuel Rogers, appellant herein, a general warranty deed conveying said property to the latter, who took possession, terminated the Fitch lease, as provided for therein, and re-leased the hotel to others. At the time of the conveyance to Manuel Rogers, Fitch, although paying only $75 a month rental for the hotel, was subletting portions of the ground floor for $115 a month. In November, 1909, Mrs. Rogers· made a will, disposing of her property in detail, distributing it among her several children. No mention was made in this will of the hotel property, although it was provided that all her property not specifically mentioned in the will should be distributed equally among her several sons. It was also provided that if any beneficiary under the will should contest the same, such contestant would thereby be cut off from any participation in the estate. Upon the death of Mrs. Rogers, in November, 1912, this will was duly probated, and in accordance with its provisions Manuel Rogers became the independent executor of the estate, and has administered the same without interference or question.

In May, 1913, T. C. and W. L. Rogers, sons of Julia Rogers, brought this action against the remaining son, Manuel, and also against the surviving children of Pat A. Rogers, a deceased son, to set aside the deed of their mother conveying the property mentioned to Manuel, and to partition and distribute, or sell, and distribute the proceeds of such sale, among the plaintiffs and defendants, as devisees under the will, in appropriate shares. Before the trial, plaintiff W. L. Rogers died, and his surviving wife and children, some of whom were minors, were duly substituted as parties plaintiff.

Appellant alleged that the deed was absolute, and made in good faith in consideration for his long service to his mother in taking care of and managing her large estate; while appellees alleged that the deed was executed, not for the purpose of actually passing title to appellant; but as a subterfuge to prematurely terminate the lease to Fitch, which would otherwise continue in force for years; that the deed was so executed with the understanding between Manuel and his mother

that when this purpose was served, and Fitch was ousted, and all danger of suit by him had passed, Manuel was to reconvey the property to his mother, but now refuses to do so.

The cause was submitted to a jury upon special issues, upon which the jury found: (a) That in executing the deed in question it was not the intention of Julia Rogers to convey to Manuel Rogers, appellant, the absolute or unconditional title to the property in dispute; (b) that said deed "was made and delivered for the purpose only of terminating the lease" to Fitch; and (c) against such possession, etc., as would establish in appellant a 5-year limitation title. Upon these findings the trial court rendered judgment against Manuel Rogers, setting aside the deed and dividing the property in dispute among the parties as prayed for by plaintiffs, and Manuel Rogers, as defendant below, brings this appeal.

It is undisputed that the deed of the property in question from Julia Rogers to Manuel Rogers was deliberately and properly executed and acknowledged, and promptly and properly delivered and recorded. The only issue upon the trial was, What was the purpose of the deed? Appellees swore that it was executed designedly for the sole purpose of terminating the Fitch lease, as a result of a family conference, participated in by both appellant, appellees, and their mother, the grantor, at which it was decided that the property under that lease was not bringing in as much rental as it could be made to bring but for such lease; that the scheme worked, the deed was made, Fitch was ousted, and the property re-leased for more money. Appellant, on the other hand, swore that the deed was executed in good faith, for a consideration, as an absolute conveyance of the property to him; but the jury found against him and for appellees, on the issue, and that settles it.

[1] Now, when we tie the admitted and undisputed facts onto the finding of the jury, as we must do, we are confronted with this outstanding, and, we think, controlling, situation: The deed which appellees seek to set aside, in order that they may recover the property conveyed in that instrument, was executed by the grantor, under whom appellees claim, for the sole purpose, which was actually accomplished, of defrauding a third party out of a valuable right. Equity will not lend its aid to such a scheme. Finding the parties in such a situation, it will leave them there, and go on about its business of enforcing rights more cleanly acquired, and redressing wrongs more unjustly done. There is no difference between the position of Fitch, the lessee in this case, and that of a creditor whose rights have been defeated by means of a fraudulent conveyance, and it is universally held that such conveyance cannot be set aside at the instance or for the benefit of the grantor, or those claiming under him. Hoeser v. Kraeker, 29 Tex. 450; Eastham v. Rountree, 56 Tex. 110; Wilson v. Demander, 71 Tex. 603, 9 S. W. 678; Rivera v. White, 94 Tex. 538, 63 S. W. 125; Dittman v. Weiss, 87 Tex. 614, 30 S. W. 863; Hunter v. Magee, 31 Tex. Civ. App. 304, 72 S. W. 230; Roth v. Schroeter, 129 S. W. 203; Scarborough v. Blount, 154 S. W. 312.

Appellees alleged in their pleadings, while appellant stoutly denied in his, that appellant himself procured his mother to execute the deed for the purpose alleged by appellees. There was no proof of this contention, unless it be found in the testimony of appellee T. C. Rogers that the four brothers, including appellant and himself, framed up the scheme. But this contention, if true or not, is quite beside the question, and wholly immaterial. As for that, we can hardly conceive of a fraudulent conveyance in which the grantee is innocent of the fraudulent intent. The point is that the grantor executed the deed for the fraudulent purpose, and the inquiry need go no further. The deed here must stand, since Fitch, the victim of the fraud, did not see fit to set it aside, as he could have done under the findings of the jury in this case. Nor does it matter that the fraud was done by the ancestor of appellees under whose will they claim this property, and not directly by appellees themselves. As was said by Justice Neill of this court, in Roth v. Schroeter, supra, a case quite like this in principle:

"Inasmuch as the appellants are the heirs of [the grantor] and * * * base their right to recover upon inheritance from him, they cannot avoid their ancestor's deed * * * upon the ground that it was made for the purpose of defrauding his creditors so as to let in title by inheritance. As to that matter, they stand just as he would were he alive and invoking a court of equity to annul his deed on that account. Equity has no healing balm for the fraudulent acts of any one, nor will it salve them over for his or his children's enjoyment."

Appellees also urge in support of the judgment that the deed in question was without consideration. But that does not matter, either. It must stand, nevertheless. Hoeser v. Kraeker, supra; Hunter v. Magee, supra; Scarborough v. Blount, supra.

[2] It is also contended by appellees that, as the jury did not expressly find in terms that the facts they found as true constitute fraud, his court cannot so designate them, as fraud is never presumed. It is true, in the abstract, that fraud is never presumed. But here the jury found that it was not intended by Mrs. Rogers to convey by her deed the absolute or unconditional title in the property to Manuel Rogers, but, on the contrary, that the deed was made and delivered for the sole purpose of terminating the Fitch lease. We think these facts constitute fraud

as a matter of law, and an express finding of the jury is not essential to such conclusion, but would be mere surplusage.

Now, it does not appear that appellant has in any particular assignment raised the question we have discussed, although he does raise it in one or two propositions, placed under assignments to which they are not germane. In fact, appellant is in the anomalous attitude of very strenuously protesting against the very finding of the jury upon which we feel bound to reverse the judgment appealed from. But that does not matter. The judgment for appellees is based upon findings of fact which in our opinion absolutely preclude them from recovery. This presents fundamental error, requiring us to reverse that judgment, which will be done, and this conclusion renders it unnecessary to discuss or pass upon the assignments presented.

[3] The parties are irrevocably committed to the theories and facts presented by them respectively in the court below and here. Upon neither theory, and upon neither state of facts, can appellees recover, and no purpose can be served by remanding the cause. Accordingly, judgment should be here rendered for appellant and it is so ordered.

Reversed and rendered.

### On Motion For Rehearing.

[4] Appellees complain that to here render judgment for appellant will upset the order of the trial court taxing appellant with the item of $500 allowed the guardian ad litem of the children of W. L. Rogers, a deceased plaintiff in the action, as attorneys' fees herein; that as these children were impleaded by appellant the latter should, in any event, be required to pay all costs of such impleader. It is true the rendition of judgment here will relieve appellant from the payment of this item, as it should do, as a matter of course. W. L. Rogers was one of the original plaintiffs in the action. He died, and under the statutes the defendant was required to implead his children. The original suit failing, the defendant should be relieved of the costs of the action. The item mentioned seems to have been taxed as a part of the costs, and should take the same course as the remaining items in the cost bill.

[5] Appellees further vehemently urge that there were neither pleadings nor "a scintilla of evidence" of fraud or fraudulent intent in this case; that as the lessee of the hotel property, under the terms of the lease contract, was required to surrender the lease when the property was "sold," the conveyance appellees now seek to set aside was sufficient as a sale to warrant the ousting of the lessee, and hence no fraud was contemplated or perpetrated; that as appellant "alleges that it was a bona fide deal," and appellees "say it was a bona fide deal, but for a different purpose than that claimed by" appellant, there was no fraud alleged, and that the facts proven thereunder do not even raise the question of fraud; that Julia Rogers was "evidently densely ignorant, or in some way infirm," and that appellant controlled her and caused her to execute the deed in question, and must not be permitted to profit thereby; that under the lease contract Fitch was simply a tenant at the will of Julia Rogers, who, under the terms of the contract, could at any time terminate the lease by simply giving Fitch 30 days' notice. In deference to the earnestness with which appellees urge their motion, we will quote from both the pleadings and the evidence, from which it appears that appellees relieved appellant from alleging and proving fraud by themselves alleging and proving it, thereby precluding recovery by them (all italics ours):

(1) Appellant alleged and testified in the trial court that Julia Rogers conveyed the property to him in good faith in part payment for his services in managing her large and varied affairs over a period of many years, and denied that any other purpose whatever influenced the making of the conveyance. If the jury had found these allegations to be true, such finding, of course, would have precluded recovery by appellees. But the finding of the jury against this theory of the conveyance left nothing in the case but the theory alleged and proven by appellees, whose right to recovery must be tested alone by their own pleadings and evidence.

(2) Appellees, T. C. Rogers and W. L. Rogers, alleged with reference to the deed which they seek to set aside:

"That on or about August 28, 1906, the said Julia Rogers, deceased, made and executed a warranty deed to the above-described property to the defendant, Manuel Rogers; that said deed was made and executed by the said Julia Rogers, deceased, at the instance and suggestion of the said Manuel Rogers, and with the understanding between the said Julia Rogers, deceased, and the said Manuel Rogers that the said Manuel Rogers was to redeed said property to the said Julia Rogers, deceased, and, that said deed was made solely and alone for the purpose and with the understanding that the said Manuel Rogers, should hold said property in trust for the said Julia Rogers, deceased; that there was no consideration paid by the said Manuel Rogers for said property, and none was necessary under the agreement and understanding by and between said Manuel Rogers and said Julia Rogers, deceased, at the time said deed was made and executed."

The surviving children of W. L. Rogers (who died during the pendency of the suit), by their guardian ad litem, after adopting the above-quoted pleading, alleged:

"These plaintiffs further allege that the said Manuel Rogers is now claiming some interest or title in and to the said interest of these plaintiffs in said land and premises by virtue

of a purported deed of conveyance, but which was not executed by the said Julia Rogers for the purpose of conveying any title or interest in said land and premises therein described; that if the said deed was executed by the said Julia Rogers, it was so executed at the instance and direction of the said Manuel Rogers who was at the time managing and controlling all of the business affairs of the said Julia Rogers, and the *said deed was only made and executed for the purpose, if any, of evading a certain lease contract by which the property in question was leased for a number of years, and which said lease was then in force,* but which provided that the same should be terminated at the instance of the holder of the title to the same in the event the said Julia Rogers should dispose of the said property during the life of said lease; that as soon as the said deed had *served its purpose, as aforesaid,* the said Manuel Rogers should redeem the said property to the said Julia Rogers; that no title to the said property described therein passed by virtue of the said deed, but the same was made, as aforesaid, at the instance of and under the direction of the said Manuel Rogers for such purpose as herein alleged only; that is, he so represented and agreed; that the said deed was never delivered to him in any manner, and especially not for the purpose of conveying the title to or any interest in the said land; that he was managing and controlling all of the property of the said Julia Rogers and as such had the custody and right of possession of her property and title papers, and in this way he came into possession of the said deed, if any was executed, or any he has; that he failed, and now refuses, to reconvey the said property, as it was understood and it was agreed he would do as soon as the said alleged deed *had served its purpose as herein alleged; and as soon as all danger of being sued upon the rental contract aforesaid had passed.*"

The jury found, in response to the only issues submitted to them:

(a) That it was not the intention of Julia Rogers to convey to Manuel Rogers by the deed in question the unconditional title to the property in dispute; but (b) "that the deed in question * * * was made and delivered *for the purpose only of terminating the lease of the property * * * between Julia Rogers and W. L. Fitch*"; and (c) against Manuel Rogers on limitation.

(4) Manuel Rogers, appellant, and T. C. Rogers, appellee, were the only sons of Julia Rogers living at the time of the trial. No other persons knew of the circumstances leading up to and surrounding the execution of the deed in dispute. Manuel testified according to his pleadings, but the jury found against him. This left, standing alone, on this phase of the case, the testimony of appellee, T. C. Rogers, who, after testifying that the property in dispute was not disposed of in the will of Julia Rogers, further testified in regard to the matters now under consideration:

On direct examination: "The reason why this particular property was not set out in this will, I suppose it was because it was in his name. *It was transferred to brother Manuel to break up a lease a fellow by the name of Fitch had,* and my mother and brother Willie (W. L. Rogers) come down and leased that place to this man by the name of Fitch. It was leased for a little of nothing, and the lease, I think, read, for one year, with the privilege of four more. In case of any sale of the property the lease would be null. Then the only way to break that lease was for my mother to sell or transfer it to some one else, and she transferred it to my brother Manuel *for the purpose of breaking the lease, which was done,* and after everything was settled that brother of mine was to release it to another party. This conveyance was made by my mother for *the purpose of defeating this lease.* * * * There was an understanding between all the brothers as to this transfer. *We all knew it.* All the brothers understood that it was made for that purpose—all the family—four. There was brother Pat, Willie (W. L.), Manuel, and myself; and there was an understanding as to a reconveyance, and he promised to reconvey it after my mother's death. * * * "

"Cross-examination: "I think my mother was 80 years of age when she died. She was an intelligent woman for a person of her age, and, of course, knew what she did. * * * My mother was in possession of all her senses—she was in her senses up to the time of her death. She knew what she was doing all the time. *She consented to our proposition. We were trying to defraud Fitch out of the lease—that is understood.* * * * I am saying that was the purpose of the deed—that the deed was made for that purpose—for the breaking up of that lease. *We were trying to break up the lease unlawfully.* * * * Of course, she knew it, and *we told her how to get out of that lease.* It was a proposition between all of us—my brother Pat, brother Willie (W. L.), brother Manuel and myself. * * * By means of this deed to Manuel, I would have the jury to believe, *it would enable her to break that contract with Fitch and put him out. That was the purpose it was made for, to break the lease—convey. the property to break the lease.* I haven't got that lease. * * * It was made for the purpose of transferring the St. James property—the two lots, to Manuel Rogers, for the purpose of getting more rent for the St. James Hotel after it got into his possession. Then he could break it and get Mr. Fitch's lease. As to the truth of those recitals, why, they were made for the purpose of breaking up the lease. * * * "

Redirect examination: "As to the terms of the lease, it was given, if I am not mistaken, for one year, with the privilege of four more, and if there was a sale, why, that lease would expire. If there was any sale, he only had it up to that time—it was agreed that way. *Then, in order to' defeat that extra four years, why, my mother executed this deed.* The reason for that was that the hotel wasn't getting the rent that it should get, and they could get more rent, and that is why it was made. * * * The lease provided that, in the event the property was sold, the lease would terminate. That was understood, and that was in Mr. Fitch's lease. As to whether Manuel Rogers had anything to do with the execution of this deed, why, it was understood between

him and all of us brothers that the way the deed was made up—so he would re-lease the hotel and get more rent."

The motion for rehearing is overruled.

---

⚍For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes