MESSER v. ZIEGLER et al.　(No. 11350.)

(Court of Civil Appeals of Texas.　Fort Worth.　Jan. 9, 1926.　Rehearing Denied Feb. 27, 1926.)

Fraudulent conveyances &#9754;174(4)—Where grantor conveyed because of fear of results of pending suit against him, held that, in action to establish alleged parol trust to reconvey, testimony that grantor did not owe anything to plaintiff in suit filed against him was inadmissible.

Where grantor conveyed non-exempt property to wife because of fear of results of suit pending against him, and to hinder and defraud one claiming to be creditor, *held* that, in action wherein grantor was seeking to establish parol trust to reconvey, testimony that grantor did not in fact owe anything to plaintiff in such pending suit was inadmissible.

Error from District Court, Tarrant County; Bruce Young, Judge.

Action by Mrs. Emma Ziegler and others against C. H. Messer. Judgment for plaintiffs, and defendant brings error. Affirmed.

Simpson & Rawlings and Parker & Moore, all of Fort Worth, for plaintiff in error.

Goree, Odell & Allen and L. L. Gambill, all of Fort Worth, for defendants in error.

BUCK, J.　Plaintiffs below, Mrs. Emma Ziegler, joined by her husband, J. C. Ziegler, of Wichita Falls, and Mrs. Sallie Smith, joined by her husband, L. F. Smith, of Orange, Tex., sued Chas. H. Messer for partition of lot 6, block 34, Union Depot addition to the city of Fort Worth. They alleged that each was the owner of an undivided one-fourth part of said land and premises, together with the improvements thereon, the same being owned by each of said plaintiffs as her separate property and estate, and that the defendant in error, Messer, was the owner of an undivided one-half of said land and premises. They further alleged that the value of the property was $4,000, and prayed that commissioners be appointed and a writ of partition issue, and that, in the event said property should be found to be incapable of an equitable partition, the same be ordered sold and the proceeds divided between the plaintiffs and the defendant as their interests should appear.

They further alleged that they were sisters by half blood of the defendant's former wife, Mrs. M. L. Messer, and that at the time of Mrs. Messer's death she owned the property as her separate estate, and that plaintiffs in error and defendant in error were the only heirs at law of the said Mrs. M. L. Messer, deceased. They further alleged that, since Mrs. Messer's death, the defendant had had possession of the property, and had collected rents and revenues from the same, and appropriated the same to his own use and benefit.

Defendant filed an answer consisting of a general demurrer and a general denial. Supplemental pleadings were filed by both parties, but their contents need not be here further noticed, except as they appear in the agreed statement of facts filed by the trial court.

Judgment was rendered granting the partition prayed for and finding that the defendant Messer had collected rents and revenues from said property since the death of his wife to the amount of $400, and had expended the sum of $98.45 in the care and management of said property, and that he was entitled to $22 as a reasonable compensation for his management of said property during said period. Said property was ordered sold, and plaintiffs below were each awarded one-fourth of such proceeds, and in addition the sum of $81.14 each. From this judgment the defendant has appealed.

The agreed statement of facts is as follows:

"We, the parties to the above styled and numbered cause, whose names are signed hereto, being all of the parties to this suit, hereby agree that the following is a true and correct statement of the facts in this cause:

"(1) That the plaintiffs in this cause are Emma Ziegler, joined by her husband, J. C. Ziegler, who resides in Wichita county, Tex., and Sallie Smith, joined by her husband, L. F. Smith, who resides in Orange county, Tex. That the defendant is C. H. Messer, who resides in Los Animas county, Colo.

"(2) That the defendant, C. H. Messer, is the surviving husband of Mrs. M. L. Messer, deceased, who died during the month of December, 1922. That the plaintiffs Emma Ziegler and Sallie Smith are the sisters by the half blood of the said Mrs. M. L. Messer, deceased. That the plaintiffs and defendant are the sole and only surviving heirs at law of the said Mrs. M. L. Messer, deceased.

"(3) That on, to wit, the 5th day of June, 1916, Meridith R. Carb and wife, Bessie B. Carb, conveyed by general warranty deed to the defendant, C. H. Messer, the following described property, to wit: Lot 6, block 34, of the Union Depot addition to the city of Fort Worth, Tarrant county, Tex. That immediately thereafterwards the defendant, C. H. Messer, placed improvements on said property consisting of a dwelling house, barn, etc. That at the time of the conveyance of said property to the said C. H. Messer, and the placing of

the improvements thereon by him, he was the husband of the said Mrs. M. L. Messer, now deceased, and said property was paid for with community funds, and was a part of the community estate of the said C. H. Messer and wife, M. L. Messer. That on, to wit, the 22d day of June, 1918, the defendant, C. H. Messer, executed and delivered to his wife, Mrs. M. L. Messer, a general warranty deed, conveying to her said property, the consideration expressed in said deed being 'love and affection I have for my wife M. L. Messer,' the deed not reciting that the property was conveyed to Mrs. M. L. Messer as her separate property.

"(4) That on, to wit, the 20th day of June, 1918, one E. Hunt filed suit in the county court of Tarrant county, Tex., against C. H. Messer, claiming an indebtedness due the said E. Hunt by said C. H. Messer in a sum within the jurisdiction of said county court. That the said C. H. Messer filed an answer in said cause in denial of said claim of the said E. Hunt, which suit remained on file until the 10th day of January, 1921, when the same was dismissed by the court by entry on the docket for want of prosecution.

"(5) That the defendant, C. H. Messer, executed and delivered to his wife, Mrs. M. L. Messer, said deed of conveyance on the 22d day of June, 1918, because he feared that the said E. Hunt would attempt to assert some claim in said property by virtue of said suit filed by the said E. Hunt, or, if the said E. Hunt should recover in said suit, he would attempt to subject the same to execution, and to prevent any contingency of such the payment of such claim, with the agreement entered into by and between the said C. H. Messer and his wife, the said Mrs. M. L. Messer, prior to and at the time of the execution of said deed, that the said C. H. Messer should retain his community interest in said property, and that the said M. L. Messer should hold the legal title to same for the use and benefit of herself and the said C. H. Messer, and that the said C. H. Messer was not parting from his community interest in same; and, further, that at future date the said M. L. Messer should execute a deed to herself and the said C. H. Messer to said property so that the record would show that both of them owned a community interest in said property. That the said Mrs. M. L. Messer died intestate, and without reconveying to the said C. H. Messer his interest in said property in accordance with their agreement. That the record title to said property at this time stands in the name of Mrs. M. L. Messer.

"(6) That the property hereinabove described was, at the time of the conveyance of same from C. H. Messer to his wife, Mrs. M. L. Messer, the only nonexempt real property belonging to the defendant, but that at said time of said conveyance, and for a long time subsequent thereto, the defendant, C. H. Messer, had on deposit in a bank in the city of Fort Worth, Tarrant county, Tex., sufficient money to satisfy the claim of the said E. Hunt alleged in the suit which he filed. That the said E. Hunt had been a former business associate of C. H. Messer, and at the time of the dissolution of their business relations, about eighteen months prior to the execution of the deed from C. H. Messer to his wife,

he knew in what bank C. H. Messer carried his account. That the time of said conveyance the said C. H. Messer carried his account in the same bank.

"That since December, 1922, the said C. H. Messer has collected the sum of $440 as rent on said property, and has expended the sum of $115.45 as repairs and taxes, and as commission for handling said property.

"That said property is not susceptible of equitable partition."

We are not concerned with the difficulty appellant may have had in proving the parol trust claimed. It is admitted he did prove it.

There is one bill of exception in the record, and only one question presented, to wit, Did the trial court err in refusing to admit in testimony the following evidence?

"Be it remembered that on the trial of the above styled and numbered cause in this court on the 2d day of October, A. D. 1924, after the defendant, C. H. Messer, had been duly sworn by the court, he testified as follows:

" 'My name is C. H. Messer. I am the defendant in this case. I am acquainted with E. Hunt, who, on the 20th day of June 1918, filed a suit in the county court of Tarrant county, Tex., for civil cases, a case against me which was styled E. Hunt v. Chas. H. Messer, and being No. 16656 on the docket of said court, in which suit the said E. Hunt asked for judgment against me on a claim which he alleged he held against me.'

"And be it further remembered that, after the introduction of the above testimony, the defendant offered to prove by the said C. H. Messer the following testimony:

" 'At the time E. Hunt filed the case above referred to against me I did not owe E. Hunt anything. He had been a former business associate of mine in the contracting business in Fort Worth, Tex., but we had dissolved our business relations about eighteen months before he filed this suit, at which time he and I had a full and final settlement, and I paid him in full for everything that I owed him. Mr. Hunt's wife was continually butting into our business. She would come into our office, or in places where we were at work on jobs, and raise a disturbance. On several occasions I had arguments with her and Mr. Hunt about her actions and butting into our business, and Hunt and I had considerable hard words over it. Finally our relations became so disagreeable by reason of Mrs. Hunt's actions that I told Hunt we would have to dissolve partnership, and we did; and, as I have stated, before we figured up our business, and I paid Hunt off in full. Hunt on several occasions expressed his dissatisfaction with reference to what he said my conduct was in regard to his wife butting into our business, and about eighteen months after we had dissolved partnership and settled all of our accounts he filed this suit against me in the county court. From the time we dissolved our partnership and up to the time he filed the suit, a period of about eighteen months, Hunt never at any time asked me for any money, and never at any time told me in any way that I owed him any money for anything, and during that period of time he never at any time expressed to me that he con-

sidered that I owed him anything, and he never in any way, himself in person or through anybody else, made any claims to me that I owed him anything, and the first intimation I had that he was claiming that I owed him anything was when he filed the suit.'

"To which testimony the plaintiff in open court duly and timely objected for the following reasons, to wit:

"That the same was irrelevant and incompetent, and does not show, or tend to show, that said suit brought by the said E. Hunt was a fictitious suit or claim, and does not show, nor tend to show, that said claim or suit brought by the said E. Hunt was instituted or demanded for the purpose of humiliating, embarrassing, or harassing C. H. Messer, or that said E. Hunt was not in fact a creditor of said defendant, Messer, on June 22, 1918, or that he could not have recovered judgment on his suit filed in the county court of Tarrant county on June 20, 1918; further, that the admission of said testimony would involve the trial herein of collateral matters not properly subject to determination in this suit, which objections were by the court sustained.

"To which action of the court the defendant then and there in open court duly and timely excepted, and submits this his bill of exception, and asks that the same be signed, filed, and made a part of the record in this cause, which is accordingly done."

The question before us is, Where a parol trust to reconvey is claimed by the grantor in a conveyance, and it is admitted that at the time of the conveyance a suit for debt against the grantor had been filed, and the conveyance was made by the grantor because he feared that the plaintiff in the suit against him would attempt to assert some claim in said property by virtue of said suit, or if the plaintiff should recover in said suit, he would attempt to subject the property to execution, and, where the facts further failed to show that the property so conveyed was the homestead of the grantor and grantee, or otherwise exempt from execution, and was the only property subject to execution owned by the grantor at the time of the conveyance, upon a trial by the grantor and other parties claiming an interest in the property, the grantor attempting to establish the validity of the parol trust to reconvey, and the other parties denying the right to do so, did the trial court err in excluding testimony to the effect that the grantor did not in fact owe anything to the plaintiff in the suit against him?

Appellant cites only five cases to support his contention. The first is that of Rivera v. White, 63 S. W. 125, 94 Tex. 538. In that case Rivera conveyed the land in controversy to his sister, the wife of Harry L. White, who resided in Texas, by a deed reciting the payment of "one dollar and other considerations." In fact, there was no consideration, but the property was conveyed upon an agreement that Mrs. White should hold it in trust for plaintiff for the purpose of avoid-

ing a claim for alimony which plaintiff feared his wife, who had sued him in Illinois for a divorce, would make against him. Mrs. White also agreed to sell the property for plaintiff's benefit, or to reconvey it to him. The divorce was granted in April, 1898, but there was no evidence that any claim for alimony was ever set up or allowed, or facts existing entitling the plaintiff's wife to such an allowance. Mrs. White died without having reconveyed the land, leaving her husband and some minor children surviving her. White executed to plaintiff a release of all claim to the land, and plaintiff brought this action against the minor children, joining White as their guardian, to recover the property. A recovery was denied him in the district court and the Court of Civil Appeals, the latter court basing its decision upon the proposition that the deed was binding upon him, and that the trust could not be enforced because of the intent with which the deed was made, to defraud his wife of her alimony. The Supreme Court said that there could be no doubt of the correctness of the holding of the Court of Civil Appeals and the trial court if it appeared that the wife had a well-founded claim for alimony against her husband at the time the deed was made. But it did not appear in this case that the wife had such a claim, or had even asserted such a claim. The opinion of the court, in part, is as follows:

"The statute of frauds, for the protection of creditors, makes void all conveyances of property made by their debtors with intent to defraud them, and, in order to carry out its policy and deter debtors from such attempts to put their property beyond the reach of creditors and, at the same time, secure to themselves the enjoyment of it by secret arrangements with those to whom it is apparently conveyed, the statute makes such conveyances valid and binding between the parties; and courts, in furtherance of this policy, refuse to give any relief against such conveyances and enforce any agreements or trusts growing out of them. But the statute applies only to conveyances made by debtors, and it is therefore only to these that such consequences should attach. The statute does not prohibit conveyances by persons who are not indebted, and no policy of the law is thwarted by a mere motive which cannot work injury to creditors. Ellis v. Valentine, 65 Tex. 547. The motive with which such a conveyance is made and the fears by which it is prompted are of no importance, unless there are creditors to be protected by the statute. When the statute does not apply to the case, there is nothing to prevent the court from enforcing the rights of the parties, as they are fixed by their agreements. That a conveyance upon a trust, such as that shown by the evidence, constitutes the cestui que trust the equitable owner of the property is not to be disputed, unless the motive with which the deed is made vitiates the trust; and, we think, the law has no concern with the futile intent to protect the property from a claim which its owner fears may be asserted against him, but

which is never asserted and does not exist. The law of this state does not entitle the wife, suing for divorce, to alimony as a matter of course, and there is no evidence that the law in Illinois is different. Rev. St. art. 2896; Wright v. Wright, 6 Tex. 29. The facts of the case are, therefore, not such as to preclude plaintiff from enforcing the trust upon which the conveyance was made."

In the case of Newman v. Newman (Tex. Civ. App.) 86 S. W. 635, plaintiff Newman brought suit against his wife to procure the cancellation of two deeds made to her by him in consideration, as recited therein, of one dollar and love and affection, and by their terms conveying certain lands to her in her separate right. He also sought to have the court declare the status of the title of two other tracts conveyed to Mrs. Newman by third parties, alleging that, though they were acquired during marriage, and by community funds, and were therefore community property, she was claiming them in her separate right, and that her claim was a cloud upon his title thereto. Judgment by default was taken against the wife, and she appealed to the Court of Civil Appeals at Galveston, and contended there that the petition was bad on general demurrer, and therefore could not support the judgment by default. The court held that a husband who, actuated by a baseless fear of pending litigation against him, conveys his property to his wife without reserving the beneficial title in himself, and without any undue influence by his wife, and when not subject to any mental incompetency, is not entitled to have the conveyance set aside; that a deed executed by a husband to his wife and recorded by him, but never delivered to the wife, but retained in his possession, may be set aside at his instance. The court further held that the petition was subject to a general demurrer, and reversed the judgment below, and remanded the cause.

In Du Perier v. Du Perier, 126 S. W. 10, 59 Tex. Civ. App. 224, writ of error denied, and in Wells v. Jamison, 252 S. W. 1023, the latter by the Commission of Appeals, approved by the Supreme Court, it was held that, where the property was conveyed with the intention on the part of the grantor to defraud his creditors, but the property conveyed was the homestead, and therefore exempt from the claim of the creditors, the motive was not the controlling issue, and that the parol trust could be enforced.

We have read the case of Rudasill v. Rudasill (Tex. Civ. App.) 219 S. W. 843, the case last cited by appellant, and do not find it pertinent to the issue here presented, except the holding that a deed absolute on its face may have a parol trust ingrafted upon it.

In the cases of Shields v. Ord (Tex. Civ. App.) 51 S. W. 298, Searcy v. Gwaltney Bros., 81 S. W. 576, 36 Tex. Civ. App. 158, Roth v. Schroeter (Tex. Civ. App.) 129 S. W. 203, and Rogers v. Rogers (Tex. Civ. App.) 230 S. W.

489, 240 S. W. 1104, by the Supreme Court, the grantors had creditors in fact at the time of the conveyance, but the courts held in these cases that, though such creditors in fact did exist at the time of the conveyance by the grantors, it is the fraudulent intent that the court is concerned with, rather than the existence or nonexistence of the creditors in fact.

In Quarles v. Hardin (Tex. Civ. App.) 197 S. W. 1112, the grantor executed a conveyance with the intent to protect the property so conveyed from future debts, and with the intent to defraud future creditors. There were no creditors at the time of the conveyance, but the court held that the fraud existed at the date of the execution of the deed, and that the conveyance should be set aside at the instance of the subsequent creditors. The Commission of Appeals, in 249 S. W. 459, modified the holding by the Court of Civil Appeals in the last cited case, by reason of the fact that, even though the husband may have intended to defraud subsequent creditors by conveying his property to his wife, he frustrated that intention by placing the conveyance of record so as to give such creditors notice thereof, and the mere fraudulent intention not carried into effect does not invalidate the deed so as to bring it within the proviso of article 6828, Rev. Stats. See Quarles v. Eaton-Blewett (Tex. Com. App.) 249 S. W. 465, to the same effect.

In Scarborough v. Blount, 154 S. W. 312, by the Galveston Court of Civil Appeals, it was held that, where a person conveys land by a deed absolute on its face and without consideration, in fraud of his creditors, though with an understanding that the land is only to be held in trust, neither he nor his heirs can enforce the trust against the grantee or a purchaser from the grantee with notice of the fraud; such conveyances being subject to impeachment only by subsequent creditors and purchasers without notice. In that case one Alfred Blount conveyed property to his brother, William Blount, with the intent of defrauding creditors. It appears from the case that at the time of the conveyance he was being sued by one Powell, apparently being the only person holding a claim, valid or invalid, against the grantor at the time of the conveyance. At no place in the opinion does the court concern itself with the question of whether or not the suit by Powell against the grantor was based upon a just claim. The court held that the conveyance was binding as between the parties, and could be attacked only by subsequent creditors without notice. The court said:

"It is well settled that, as against Alfred Blount, the deed from him to William conveyed the land embraced in it, and that he would not have been allowed to impeach its legal effect on the ground that there was no consideration for its execution, and that William was not to take the beneficial title, but only to hold the

land in trust for him, if, as is here shown, the purpose of its execution was to defraud his creditors. Epperson v. Young, 8 Tex. 136; McClenny v. Floyd, 10 Tex. 166; Robinson v. Martel, 11 Tex. 156; Hoeser v. Kracka, 29 Tex. 454. It does not matter that the grantee was to hold the property in trust for the grantor. Such trust cannot be enforced if it springs from, and is used as a means of carrying out, the purpose to defraud creditors. In such case, the contract, as evidenced by the deed, being fully executed, the law will not assist the grantor to reap the anticipated fruits of his own fraud. Eastham v. Roundtree, 56 Tex. 110; Rivera v. White, 63 S. W. 125, 94 Tex. 538; Kahn v. Kahn, 58 S. W. 825, 94 Tex. 115. This was the situation as between Alfred Blount and his grantee. It has been settled by a long line of decisions in this state that such conveyances can only be impeached by subsequent creditors and purchasers without notice. Heirs of the grantor are in no better position to do so than the grantor himself. Danzey v. Smith, 4 Tex. 415; Dittman v. Weiss, 30 S. W. 863, 87 Tex. 614; Wilson v. Trawick, 10 Tex. 435; Hart v. Rust, 46 Tex. 557."

In the case of Pride v. Andrew, 38 N. E. 84, 51 Ohio St. 405, by the Supreme Court of Ohio, it is said:

"It is contended that the deed from Pride to Andrew was not made with intent to defraud creditors, because the result of the litigation in West Virginia showed that the claim against Pride was without any merit, and that, consequently, the claimants were not, and never had been, his creditors. The question therefore arises whether a conveyance of property by the owner, during the pendency of an action, for the purpose of defeating a judgment that may be rendered therein against him, can be set aside at the instance of the grantor or his heirs after judgment has been rendered in his favor in the pending action, the conveyance having been made without the practice of any fraud or undue influence by the grantee, and without any promise by him to reconvey the property. One of the common incentives of a grantor to transfer his property in fraud of his creditors is the commencement of legal proceedings against him to subject his property to the payment of his debts. When such transfer is made of the grantor's whole estate while a suit is pending against him, it becomes a badge of fraud, calling for explanation and justification by proof. And when it is avowed that the secret intent and purpose of the conveyance was to hinder and defeat the seizure or application of the grantor's property to the satisfaction of a judgment, if recovered against him, he confesses to a willingness and design to thwart the judgment of the court if contrary to his opinion and wishes. If the plaintiff in the suit does not succeed, the grantor, on the ground that the plaintiff has turned out not to be a creditor, then invokes the aid of the very court, it may be, whose judgment he has endeavored to make valueless, to restore to him the property which he had deeded to another under a secret trust. If the plaintiff does succeed in his action, and thereby places himself on the footing of a creditor, he may then be forced to assume the burden of overthrowing the fraudulent conveyance made by the grantor. Courts of law are the effective agencies by which creditors secure their rights, and it is to be presumed that their judgments and decrees will be founded on justice. If the grantor of property, therefore, not being certain whether his apprehensions as to the recovery of a judgment against him in a pending suit are well or ill founded, acts as if the judgment would be against him, and by conveyance puts his property in the name of another under a secret trust, he cannot complain if a court of equity leaves the parties in the position in which it finds them, and declines to set aside the conveyance."

In the case of Kihlken v. Kihlken, 51 N. E. 969, 59 Ohio St. 106, also by the Supreme Court of Ohio, the court said:

"The second aspect of the question on the plaintiffs' right to recover arises upon the fact averred in the answer of the defendant, and found by the court to be true—that the deed made by Henry to his brother John in 1888 was made for the fraudulent purpose of hindering and delaying one Catherine Miller in the collection of any judgment she might recover against him in a contemplated bastardy proceeding, and was accepted by John to assist him in this purpose. This, we think, is an additional reason why the plaintiffs below are not entitled to recover. It is too well settled in this state to need the citation of many authorities, that neither a grantor nor his heirs can have any relief in law or equity for the recovery of lands so conveyed. Trimble v. Doty, 16 Ohio St. 119; Robinson v. Robinson, 17 Ohio St. 480; Vanzant v. Davies, 6 Ohio St. 52; Barton v. Morris, 15 Ohio, 408, 431; Tremper v. Barton, 18 Ohio, 418, 422. But it is claimed that these cases do not apply here, because it is not shown or found * * * that the Miller girl had any valid claim against him or had in fact commenced any proceeding in bastardy. Conceding that this is a correct construction of the finding—which is doubtful, as the finding is that the conveyance was made to defraud her out of 'her just claim'—still it does not help the plaintiffs below. This very question here raised was disposed of in Pride v. Andrew, 38 N. E. 84, 51 Ohio St. 405. It was there held that 'where any owner, during the pendency of a suit against him, and in view of a possible judgment being rendered adversely to him, conveys his property to another, with intent to defeat the satisfaction of such judgment as may be recovered against him in the suit, he cannot, after judgment in such suit in his favor, have the aid of a court of equity to compel the grantee to reconvey to him the property.' The fact that no suit is pending at the time of the conveyance cannot vary the application of the principle, where it was made to defeat the satisfaction of any claim that might be established against him. The fact of the conveyance having been made may have dissuaded the girl from commencing any suit, just as was said in Pride v. Andrew it may have caused the party to abandon his suit rather than enter upon the task of pursuing the property."

We do not think this case in conflict with Rivera v. White, supra, because in that case no claim was being asserted against Rivera, whereas in the Kihlken Case the claim was being asserted, though no suit had been in-

stituted at the time of the conveyance. In the instant case suit had been instituted alleging a cause of action for debt against Messer. It is further probably true that Hunt in the instant case did not prosecute his cause of action to judgment, by reason of the fact that Messer had disposed of the only property he had subject to execution, except perhaps a deposit in the bank.

In the case of Poppe v. Poppe, 72 N. W. 612, 114 Mich. 649, 68 Am. St. Rep. 503, by the Supreme Court of Michigan, it was held that, where a husband voluntarily conveys property to his wife in anticipation of a suit or suits against him as the result of a conspiracy to injure him and extort money, and she knows nothing of the conspiracy except what he tells her, equity will not aid him to obtain a reconveyance, and that a parol promise by a wife to her husband to reconvey to him land conveyed by him to her is void under the statute of frauds, even though the wife herself admits the promise to reconvey.

In 12 R. C. L. p. 505, § 35, the author says:

"It may be stated as a general rule, however, that the statute applies to all property which may be subjected to the payment of debts, and to no other; for it is evident that creditors cannot be defrauded, hindered, or delayed by the transfer of property which, neither at law nor in equity, can be made to contribute to the satisfaction of their debts, and hence it is almost universally conceded that property which is by statute exempt from execution cannot be reached by creditors on the ground that it has been fraudulently transferred, and therefore none of the usual rules by which the good or bad faith of a transaction is determined are applicable in such case. It resolves itself into this: That as to exempt property there are no creditors within the meaning of the statute. This rule, of course, applies to homestead rights in the various states in which they are recognized, and to all other forms of exempt property, including pension money."

Under this section are cited a number of decisions from various jurisdictions, including the cases of Wood v. Chambers, 20 Tex. 247, 70 Am. Dec. 382; McDannell v. Ragsdale, 8 S. W. 625, 71 Tex. 23, 10 Am. St. Rep. 729.

If in fact the wife, in the case of Rivera v. White, had set up a claim for alimony, and had recovered a judgment therefor in her divorce suit, she would have been a creditor, and would have been entitled to have set aside the conveyance made by her husband to defeat a recovery for alimony. 20 Cyc. p. 431, § 5.

We conclude that the facts of the instant case, agreed to by the parties, show that the conveyance by Messer to his wife of the land in controversy was made with the purpose of delaying, hindering, and defrauding E. Hunt, an asserted creditor, because "he feared that the said E. Hunt would attempt to assert some claim to the property by virtue of said suit filed by the said E. Hunt, or if the said E. Hunt should recover in said suit [he] would attempt to subject the same to execution." That at the time of said conveyance this piece of property was the only nonexempt real property belonging to the defendant. We are of the opinion that the trial court was not required to try the issue of whether or not E. Hunt could have recovered in his suit against appellant, and that the trial court did not err in excluding testimony tending to show that the appellant did not owe E. Hunt anything at the time of the conveyance. We do not believe that we are in conflict with any of the cases cited by appellant, and especially that we are not in conflict with the case of Rivera v. White. As before stated in that case, the wife of Rivera had not sued for any alimony, and the facts did not show that she was entitled to any alimony if she had sued for it.

The judgment of the trial court is therefore affirmed.

DUNKLIN, J., not sitting.